FILED

APR 12 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. OR-15-1119-JuKiF |
| | BAP No. OR-15-1158-JuKiF |
| BRADLEY WESTON TAGGART, | (related appeals) |
| Debtor. | Bk. No. 09-39216-RLD7 |
| _____ | |
| TERRY W. EMMERT; KEITH JEHNKE; SHERWOOD PARK BUSINESS CENTER, LLC; SHELLEY A. LORENZEN, Executor of the Estate of Stuart Brown, | |
| Appellants, | |
| v. | **O P I N I O N** |
| BRADLEY WESTON TAGGART, | |
| Appellee. | |
| _____ | |

Argued and Submitted on March 17, 2016
at Pasadena, California

Filed - April 12, 2016

Appeal from the United States Bankruptcy Court
for the District of Oregon

Honorable Randall L. Dunn, Bankruptcy Judge, Presiding

_____

Appearances: Hollis K. McMilan argued for appellants Terry W. Emmert, Keith Jehnke, and Sherwood Park Business Center, LLC; James Ray Streinz, McEwen Gisvold LLP, argued for appellant Shelley A. Lorenzen; John M. Berman argued for appellee Bradley Weston Taggart.

_____

Before: JURY, KIRSCHER, and FARIS, Bankruptcy Judges.

JURY, Bankruptcy Judge:

Sherwood Park Business Center, LLC (SPBC) commenced a state court lawsuit against chapter 7[1] debtor, Bradley Weston Taggart (Debtor), BT of Sherwood, LLC (BT), and Debtor's attorney John M. Berman (Mr. Berman), prior to Debtor's bankruptcy filing. Terry W. Emmert (Mr. Emmert), Keith Jehnke (Mr. Jehnke), and Debtor were members of SPBC. The litigation arose due to Debtor's transfer of his membership interest in SPBC to another LLC entity. The membership was ultimately purchased by Mr. Berman, in violation of SPBC's operating agreement. Among other things, SPBC sought to unwind Debtor's transfer of his membership interest and expel him from the company. Debtor and BT answered the complaint and asserted a counterclaim against Mr. Emmert, Mr. Jehnke, and SPBC for attorneys' fees.

Debtor filed his bankruptcy petition on the eve of the state court trial and subsequently received his discharge. Mr. Emmert and Mr. Jehnke, represented by Stuart M. Brown (Mr. Brown),[2] resumed the state court litigation postpetition. They sought no money judgment against Debtor due to his discharge. The action ultimately went to trial. Debtor did not appear, although Mr. Berman did. After trial, the state court ruled in favor of SPBC by unwinding Debtor's transfer of his membership

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] Shelley A. Lorenzen (Ms. Lorenzen) is the executor of Mr. Brown's estate.

-2-

interest and reinstating Mr. Emmert's and Mr. Jehnke's right of first refusal to purchase the interest under the SPBC operating agreement.

Mr. Brown later filed a petition (Petition) in the state court on behalf of Mr. Emmert, Mr. Jehnke, and SPBC, seeking attorneys' fees and costs for the period after Debtor's discharge. At the same time, he sought a ruling from the state court on the issue whether the discharge injunction applied to the post-discharge fee request, asserting that Debtor had "returned to the fray" under the holding in Boeing North American, Inc. v. Ybarra (In re Ybarra), 424 F.3d 1018 (9th Cir. 2005). Debtor opposed, arguing that he had not voluntarily returned to the fray under the Ybarra rule. After a hearing, at which Debtor testified, the state court issued a written ruling, finding that Debtor had returned to the fray and thus the discharge injunction did not apply to the post-discharge request for attorneys' fees and costs under the Ybarra rule. The state court awarded SBPC its attorneys' fees and costs, but denied fees and costs as to Mr. Emmert and Mr. Jehnke.

Prior to the state court's ruling, Debtor reopened his bankruptcy case and filed a motion seeking to hold Mr. Emmert, Mr. Jehnke, and Mr. Brown (collectively, Appellants) in contempt for violating the discharge injunction under § 524(a)(2). The bankruptcy court ruled on the matter after the state court had ruled. The bankruptcy court denied Debtor's motion, finding no error with the state court's ruling on the applicability of the discharge injunction under Ybarra. Upon its own de novo review, the bankruptcy court also found that the record supported the

finding that Debtor had voluntarily returned to the fray in the state court litigation and thus the discharge injunction did not apply to Appellants' request for post-discharge attorneys' fees. At Mr. Brown's request, the state court entered judgment in favor of SPBC pursuant to its previous award.

Debtor appealed the bankruptcy court's decision to the district court. The district court reversed, finding that Debtor's actions in the state court litigation were not sufficiently affirmative and voluntary to be considered returning to the fray under the Ybarra rule. The district court remanded the matter to the bankruptcy court to determine whether Appellants knowingly violated the discharge injunction by seeking attorneys' fees in the state court.

On remand, the bankruptcy court found that Debtor had proved by clear and convincing evidence that Appellants willfully violated the discharge injunction since they were aware of the discharge injunction and intended the actions which violated it. The court entered an order for contempt. After a subsequent hearing, the bankruptcy court entered a judgment awarding sanctions in favor of Debtor against Mr. Emmert, Mr. Jehnke, SPBC, and Mr. Brown.

Mr. Emmert, Mr. Jehnke, and SPBC filed a timely appeal from the judgment (BAP No. OR-15-1119). Ms. Lorenzen, as executor for Mr. Brown's estate, filed a separate notice of appeal from the same judgment (BAP No. OR-15-1158). As further discussed below, we conclude that the bankruptcy court erred by applying an incorrect legal standard to determine whether Appellants had actual knowledge that the discharge injunction applied to their

-4-

fee request in the state court as required under the holding in Zilog, Inc. v. Corning (In re Zilog, Inc.), 450 F.3d 996 (9th Cir. 2006). Accordingly, we REVERSE the bankruptcy court's finding of contempt and VACATE the judgment awarding sanctions.

## I. FACTS[3]

### A. Prepetition Events And Debtor's Bankruptcy Filing

Debtor was a general contractor who operated through a corporation, Builders, Inc. (Builders). He developed several business parks, anchored by tenants who also were owners. In October 1999, SPBC was formed to build and operate a two-building business park in Sherwood, Oregon. SPBC was initially owned by four members, each with a 25% member interest: Debtor, Mr. Jehnke, John Hoffard, and Anthony Benthin. Debtor was designated as the manager. At some point, Mr. Emmert succeeded to the member interest of Mr. Benthin in SPBC.[4] The operating agreement governed the operations of SPBC, including transfers of ownership. Under the agreement, members had the right of first refusal before any transfer was made and any transfer of a membership interest had to be approved by a majority of the other members.

In late 2004, Debtor began experiencing financial difficulty. In connection with Builders, he stopped paying the payroll withholding to the Oregon Department of Revenue (ODR) and the Internal Revenue Service (IRS) and began diverting funds

---

[3] Many of the background facts are set forth in the bankruptcy court's Memorandum Decisions dated December 9, 2011, and December 16, 2014.

[4] Mr. Hoffard apparently joined with Debtor in filing the counterclaim against Mr. Emmert, Mr. Jehnke, and SPBC.

-5-

intended for the business to his own use. Tax liens of about $250,000 were placed against him as a result of unpaid withholdings for Builders.

At some point in 2004, Mr. Emmert acquired a 50% ownership interest in Builders. Thereafter, relations between Debtor and Mr. Emmert became contentious.

In 2005, Debtor encouraged three creditors to file an involuntary bankruptcy petition against Builders, which had become insolvent while the SPBC buildings were being constructed. The IRS claim in the Builders' bankruptcy case for unpaid withholding was (with interest) about $400,000, and the ODR had filed liens for about $110,000. These liens were filed in Washington and Deschutes Counties and attached to all real and personal property that was either owned by Debtor in late 2005 or acquired after the date.

Mr. Jehnke replaced Debtor as the SPBC manager in 2005.

It was also discovered sometime in late 2004 or early 2005 that Debtor had diverted about $30,000 in cash from SPBC for his own purposes. These funds were designated for a deposit for steel building materials. Because Debtor refused to return the money or otherwise apply it to the building materials, SPBC initiated an arbitration. The arbitrator found that Debtor converted the funds and breached his fiduciary duty to SPBC. In 2008, the award was confirmed in a judgment in favor of SPBC and against Debtor. Mr. Berman represented Debtor in the arbitration and paid the award on Debtor's behalf.

Debtor's financial condition subsequently deteriorated further. In mid-2007, Debtor, with the assistance of Mr.

-6-

Berman, formed BT and transferred his 25% member interest in SPBC to BT. Debtor pursued this so that he could sell his interest in the new LLC without complying with the restrictions imposed by SPBC's operating agreement for the sale of his membership interest. Unable to sell his interest in BT to a third party, Debtor transferred his entire membership interest in BT to Mr. Berman in exchange for payments totaling $200,000. Mr. Berman became a member in SPBC.

In September 2008, SPBC filed a complaint against Debtor, BT, and Mr. Berman in the state court, asserting claims for breach of fiduciary duty, expulsion due to breach of contract, attorneys' fees, and declaratory relief (State Court Lawsuit). An amended complaint asserted essentially the same claims with elaborating allegations. SPBC sought to expel Debtor from the company and to unwind the transfers between Debtor and BT so that Mr. Emmert and/or Mr. Jehnke could purchase Debtor's membership interest. In October 2009, Debtor filed an answer to the amended complaint, asserting affirmative defenses and stating a counterclaim for attorneys' fees against Mr. Emmert, Mr. Jehnke, and SPBC.

On November 4, 2009, the day that the trial in the State Court Lawsuit was to begin, Debtor filed a chapter 7 petition. In Schedule B, Debtor did not mention any interest in either SPBC or BT, but he did include a potential attorneys' fee award on his counterclaim in the State Court Lawsuit. Shortly after the filing, the chapter 7 trustee in Debtor's case filed a report of no assets available for distribution, and Debtor received his discharge by order entered on February 23, 2010.

-7-

The State Court Lawsuit was stayed while Debtor's case was pending.

## B. Post-discharge Events

### 1. The State Court Proceedings

After Debtor received his discharge, Mr. Brown resumed the State Court Lawsuit on behalf of Mr. Jehnke and Mr. Emmert. He served Debtor with a subpoena for a deposition on April 9, 2010. Mr. Berman filed a motion for a protective order on Debtor's behalf, requesting that the subpoena be quashed. Evidently the state court denied the motion because Debtor appeared for his deposition and was examined.

The state court scheduled the trial for May 18, 2010. The day before, Mr. Berman filed a motion to dismiss the claims against Debtor. Mr. Berman asserted that dismissal was proper since the claims against Debtor related solely to his pre-bankruptcy conduct and thus were subject to his discharge. The motion did not mention Debtor's counterclaim against Mr. Emmert, Mr. Jehnke, and SPBC for attorneys' fees.

The motion to dismiss was argued on the first day of the trial. Mr. Brown agreed that his clients would not be seeking monetary relief against Debtor, but argued that Debtor was a necessary party with respect to the expulsion claim. The state court ruled that no money judgment would be entered against Debtor, but otherwise denied the motion to dismiss. Mr. Berman renewed the motion to dismiss the claims against Debtor at the end of trial. The state court denied the motion. Debtor did not appear or testify at the trial.

Following the trial, the state court generally found in

favor of SPBC. Mr. Brown drafted the Findings of Fact and Conclusions of Law (Findings and Conclusions) which the state court later signed. All counterclaims of Debtor and BT were dismissed with prejudice. Debtor's transfer of his interest in SPBC was unwound and the right of first refusal to purchase the interest according to the provisions in the operating agreement was triggered. The judgment provided that the purchase price shall be the fair market value of SPBC as of the date of entry of judgment, multiplied by Debtor's 25% interest less any unpaid post-bankruptcy petition attorneys' fees and costs, and any prevailing party fees which might be assessed against Debtor under Oregon law. The Findings and Conclusions were entered on July 29, 2010.

Although the issue of attorneys' fees was discussed, that issue was not decided at the judgment stage. The state court entered a general judgment on May 26, 2011. Debtor and BT appealed the judgment.

Subsequently, Mr. Brown filed the Petition seeking attorneys' fees and costs on behalf of Mr. Emmert, Mr. Jehnke, and SPBC.[5] The Petition acknowledged that Debtor's liability for fees, if any, "would be limited to fees incurred after he filed for bankruptcy on November 4, 2009[,]" citing In re Ybarra.

In opposition, Debtor argued:

> Not only have I not sought to be involved with this litigation at any time, especially after my bankruptcy, but I sought to be dismissed prior to the

_____

[5] The attorney who represented SPBC authorized Mr. Brown to file the Petition on behalf of SPBC.

-9-

recent trial. I note that Emmert and Jehnke contend that I 'joined the fray' by seeking a protective order. . . . Any legal fees incurred by Emmert and Jehnke in this matter were mostly not in litigation with me because I did not have much to do with this case. . . . It is submitted that when I received a discharge in bankruptcy, that discharge protected me from any liability such as being sought in this matter, both for attorney fees and for any costs. It is important to point out that I sought nothing in this litigation.

Mr. Brown clarified at the August 1, 2011 hearing on the Petition that only post-discharge attorneys' fees and costs were sought from Debtor. In arguing that Debtor returned to the fray under the Ybarra rule, Mr. Brown noted that on the one hand, Mr. Berman will say he does not represent Debtor and will not accept service, but on the other hand, Mr. Berman will come into court and file something on behalf of Debtor. Next, he pointed out that Debtor had moved for a protective order post-discharge, filed a motion to dismiss the claims against him, and never dismissed his counterclaim for an award of attorneys' fees and costs. Mr. Brown further asserted that Debtor claimed the attorneys' fees that might be awarded to him in the litigation as an asset in his bankruptcy case. This evidence, according to Mr. Brown, showed that Debtor had not abandoned his counterclaim for attorneys' fees against Mr. Emmert, Mr. Jehnke, and SPBC. Finally, Mr. Brown argued that although Debtor claimed to have asked to be dismissed from the litigation, this was not true. Rather, Debtor asked for dismissal of the claims against him on the grounds that those monetary claims were discharged by his bankruptcy. Mr. Brown maintained that all these facts showed that Debtor was participating in the litigation going forward.

Mr. Berman called and examined Debtor as a witness at the

-10-

hearing on the Petition. Debtor testified that he was tired of the litigation that had been going on for years and that he never intended to participate in any manner in the lawsuit after his bankruptcy discharge. He also testified that after he filed his bankruptcy petition, he did nothing to attempt to assert his right under the state court counterclaim for attorneys' fees. At another point, Mr. Berman stated on the record that he was representing Debtor. Finally, in argument, Mr. Berman again noted that Debtor had no involvement in the case. At that point, Mr. Berman informed the state court that Debtor had filed a motion for contempt in the bankruptcy court alleging that Appellant had violated the discharge injunction. Mr. Berman opined that the state court could decide the matter or wait and hear what the bankruptcy court said. After the hearing concluded, the state court took the matter under advisement.

On August 11, 2011, the state court issued a letter opinion (Letter Opinion) addressing the Petition. The Letter Opinion states in relevant part:

> The court notes that In re Ybarra, 424 F[.]3d 1018 (9th Cir. 2005) holds that the trial court has power to award post-petition attorney fees against a debtor who continues to pursue litigation post-petition that had been begun pre-petition. This is consistent with the federal case law the court reviewed.
>
> Taggart filed an answer that was file stamped October 28, 2009. The answer contained a counterclaim for attorney fees based on Section 13.6 of the Operating Agreement.
>
> The answer also sought to have plaintiff's claim to be dismissed against him. This was consistent with the oral Motion to Dismiss raised at the time of trial. Taggart never abandoned his counterclaim for attorney fees. Rather he continued to pursue his position

-11-

postpetition that the plaintiff's claim against him be dismissed which, if successful, would have led to Taggart having a contractual right to obtain attorney fees.

The court awards attorney fees in favor of BT of Sherwood [sic-actually, SPBC] in the amount sought at oral argument. My notes are difficult to decipher but I believe that amount was $44,691.50. (It may be accurately $44,611.50 as the ten column is the one I am having trouble reading.) Costs and disbursements sought as well as the standard prevailing party fee are also appropriate.

[SPBC] is the prevailing party with respect to Brad Taggart (as noted above) . . . .

In the end, the state court granted SPBC its attorneys' fees and costs, but denied Mr. Emmert's and Mr. Jehnke's requests.

**2.    The Bankruptcy Court Proceedings**

Meanwhile, about one month earlier, on July 13, 2011, Debtor had reopened his case and filed a motion in the bankruptcy court seeking to hold Mr. Brown, Mr. Emmert, and Mr. Jehnke in contempt for seeking attorneys' fees and costs in the state court in violation of the discharge injunction under § 524. Debtor repeated his arguments that he made no claim to any interest in SPBC and that he filed bankruptcy because he did not want any further involvement with SPBC, Mr. Emmert, or Mr. Jehnke. He further reiterated that he did not participate in the state court trial and made no claims in the trial. Finally, he contended that the request for attorneys' fees in the state court was causing him extreme emotional distress and that Mr. Brown, Mr. Emmert, and Mr. Jehnke were denying him a fresh start. Debtor sought sanctions consisting of his attorneys' fees and costs, $50,000 for emotional distress, and $100,000 in

-12-

punitive damages for Appellants' intentional violation of the discharge injunction.

The bankruptcy court held an evidentiary hearing on November 14, 2011. The court acknowledged that the state court had concurrent jurisdiction to decide whether the discharge injunction was violated, but its decision had no effect if the state court "got it wrong." The bankruptcy court also observed that it had to determine whether Debtor's involvement in the state court litigation, either directly or through Mr. Berman, fit within the Ybarra rule. The bankruptcy court took the matter under advisement.

On December 9, 2011, the court issued its decision. Finding that the state court applied the correct legal standard under Ybarra, the bankruptcy court concluded that the state court's factual findings regarding Debtor's return to the fray were not clearly erroneous. After conducting an independent review of the state court proceedings, the bankruptcy court observed that due to the "mixed record," it was not sure whether any of Debtor's actions, on his own or through Mr. Berman, would establish that Debtor renewed active participation in the State Court Lawsuit post-discharge. Apparently, the pivotal fact for the bankruptcy court's analysis was the state court's determination that Debtor's attempted transfer of his membership interest in SPBC was ineffective and thus would be unwound, and that Debtor would be paid for that interest.[6] Accordingly, the

---

[6] In other words, although Debtor claimed he asserted no interest in SPBC in the litigation, because the state court
(continued...)

-13-

bankruptcy court found that Debtor re-engaged in the State Court Lawsuit, effectively returning to the fray for Ybarra purposes. The court concluded that Debtor did not meet his burden of proof by clear and convincing evidence showing that Appellants had willfully violated the discharge injunction.

On January 18, 2012, Mr. Brown submitted a supplemental judgment (Supplemental Judgment) to the state court in connection with its previous award of attorneys' fees and costs to SPBC.

On January 23, 2012, the bankruptcy court entered the order denying Debtor's motion for contempt. Debtor moved for reconsideration, which the bankruptcy court denied.

### 3. The District Court Proceedings

Debtor appealed the bankruptcy court's order denying his motion for contempt to the district court. The district court reversed, based on its conclusion that Debtor's actions in the state court were not sufficiently affirmative and voluntary to be considered returning to the fray under Ybarra. The district court remanded the matter to the bankruptcy court to consider whether Debtor had proven that Appellants "knowingly" violated the discharge injunction in seeking the attorneys' fees and

---

[6](...continued)
unwound the transfer of his membership interest, he was once again a member of SPBC. The return to the status quo gave Mr. Emmert and/or Mr. Jehnke the right of first refusal to purchase his interest as per the operating agreement. Therefore, Debtor would receive payment for his interest from one of them, separate and apart from the monies paid to him by Mr. Berman.

-14-

costs in the state court.[7]

## 4. The Remand Proceedings

On November 7, 2014, the bankruptcy court heard further oral argument on the issue whether Appellants "willfully" violated the discharge injunction and took the matter under advisement.

On December 16, 2014, the bankruptcy court issued its decision. The court recited the two-part test in the Ninth Circuit for determining whether there was a willful violation of the discharge injunction set forth in Zilog. In Zilog, the Ninth Circuit cited with approval the standard adopted by the Eleventh Circuit for violation of the discharge injunction: "[T]he movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." 450 F.3d at 1007 (citing Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002) (citing Hardy v. United States (In re Hardy), 97 F.3d 1384, 1390 (11th Cir. 1996)).

Although the bankruptcy court cited the correct test for a finding of willfulness from Zilog, it instead used the test from Hardy in connection with the first prong of the test - the actual knowledge requirement. There, the knowledge requirement is phrased as whether the defendant in the contempt action "knew

---

[7] Mr. Emmert, Mr. Jehnke, and SPBC recognized in their reply brief that we have no jurisdiction to review the district court's order. Ms. Lorenzen recognized this as well in her opening brief. We express no opinion on the question whether Debtor "returned to the fray," because that issue is before the Ninth Circuit, not us.

that the [discharge injunction] was invoked." In re Hardy, 97 F.3d at 1390. Further relying on Hardy, the bankruptcy court found that this test did not allow the court to consider Appellants' subjective beliefs, good faith or otherwise, regarding whether, as a legal matter, the discharge applied to the proceedings. As a result, the court concluded that the test for actual knowledge was akin to a strict liability test. The court further decided that neither the state court's prior decision or its decision on the applicability of Ybarra insulated Appellants from a "willfulness" finding. Apparently, the bankruptcy court reached that conclusion on the basis that the state court's decision was wrong and its decision was reversed.

Based on this reasoning, the bankruptcy court decided that Debtor had proved the actual knowledge requirement by clear and convincing evidence. In other words, Appellants had actual knowledge of the discharge injunction at the time they filed the Petition in the state court requesting attorneys' fees and costs. The court concluded: "As such they are charged with knowledge of the discharge injunction."[8]

In considering whether Appellants intended the actions which violated the discharge injunction, the bankruptcy court found that there was no dispute. Mr. Brown testified he prepared and submitted the Supplemental Judgment. Because Mr.

---

[8] We assume the bankruptcy court made this finding because Mr. Emmert and Mr. Jehnke had requested their attorneys' fees and costs and not because they sought entry of the Supplemental Judgment which only applied to SPBC.

-16-

Brown would not have proceeded without approval from his clients, and because the record did not reflect that Mr. Emmert and Mr. Jehnke had instructed Mr. Brown not to proceed with the Petition, the court found that they also intended the actions that led to the entry of the Supplemental Judgment. The court thus found Debtor had proved the second element of the willfulness test by clear and convincing evidence. The bankruptcy court found the Supplemental Judgment void and entered an order holding Appellants in contempt for violating the discharge injunction.

Subsequently, the bankruptcy court held an evidentiary hearing regarding Debtor's damages and issued a written decision on March 17, 2015. While Debtor requested emotional distress damages of $50,000, the bankruptcy court ultimately found that he was entitled to $5,000, awarded jointly and severally against Appellants. With respect to the attorneys' fees and costs, the bankruptcy court awarded fees in the amount of $101,450 and costs of $4,143.71 for a total of $105,593.71, jointly and severally against Mr. Emmert, Mr. Jehnke, and SPBC, and attorneys' fees and costs totaling $92,118.71 against Mr. Brown's estate, payable jointly and severally as part of the total attorneys' fees and costs award against Appellants.

Finally, Debtor requested $100,000 in punitive damages, which he later reduced to $20,000. As to Mr. Brown, the court found punitive damages were not appropriate since they would serve no deterrent purposes with respect to his estate. The court awarded $2,000 in punitive damages jointly and severally against Mr. Emmert, Mr. Jehnke, and SPBC.

The bankruptcy court entered the order on March 26, 2015. Four days later, the court entered the judgment regarding the sanctions.

On April 13, 2015, Mr. Emmert, Mr. Jehnke, and SPBC filed a timely notice of appeal from the judgment. On the same day, Ms. Lorenzen filed a motion to extend the time for appeal. After a hearing, the bankruptcy court granted the motion on April 27, 2015, extending the time to file a notice of appeal for fourteen days after the entry of the order. On May 11, 2015, Ms. Lorenzen filed a timely notice of appeal from the judgment.[9]

## II.   JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(O). We have jurisdiction under 28 U.S.C. § 158.

## III.   ISSUE

Did the bankruptcy court abuse its discretion by finding that Appellants willfully violated the discharge injunction?

## IV.   STANDARDS OF REVIEW

Determining whether the bankruptcy court applied the correct legal standard is a question of law that the panel reviews de novo. See Bell Flavors & Fragrances, Inc. v. Andrew (In re Loretto Winery, Ltd.), 107 B.R. 707, 709 (9th Cir. BAP 1989).

---

[9] The Panel issued a one-judge order requiring Ms. Lorenzen to file a response as to why BAP No. OR-15-1158 should not be dismissed as untimely as it appeared the notice of appeal was filed one day late. The confusion arose due to the entry of a wrong event code on May 11, 2015, which was later corrected on the following day. The Panel deemed her appeal timely and a briefing schedule was set.

The bankruptcy court's finding of a willful violation of § 524 is reviewed for clear error. Sciarrino v. Mendoza, 201 B.R. 541, 543 (E.D. Cal. 1996) (citing McHenry v. Key Bank (In re McHenry), 179 B.R. 165, 167 (9th Cir. BAP 1995)) (reviewing a willful violation of the automatic stay). A finding is clearly erroneous when it is illogical, implausible, or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

We review the decision to impose sanctions for contempt for an abuse of discretion. Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003); Nash v. Clark Cty. Dist. Atty's Office (In re Nash), 464 B.R. 874, 878 (9th Cir. BAP 2012). We review for clear error the trial court's factual findings in support of a punitive damages award. Bergen v. F/V St. Patrick, 816 F.2d 1345, 1347 (9th Cir. 1987).

A bankruptcy court abuses its discretion if its decision is based on an incorrect legal rule, or if its findings of fact were illogical, implausible, or without support in the record. Hinkson, 585 F.3d at 1262.

## V. DISCUSSION

In a chapter 7 case, with exceptions not relevant here, "[t]he [bankruptcy] court shall grant the debtor a discharge." § 727(a). When entered, that order "discharges the debtor from all debts that arose before the date of the [bankruptcy filing]." § 727(b). Section 524(a) prescribes the legal effect of a discharge:

> (a) A discharge in a case under this title—. . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process,

-19-

> or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

"The purpose of the discharge injunction is to protect the debtor from having to put on a defense in an improvident state court action or otherwise suffer the costs, expense and burden of collection activity on discharged debts." In re Eastlick, 349 B.R. 216, 229 (Bankr. D. Idaho 2004) (citing Levy v. Bank of the Orient (In re Levy), 87 B.R. 107, 108 (Bankr. N.D. Cal. 1988).

**A.    Contempt Standards:   Willful Violation of Discharge Injunction**

A party who knowingly violates the discharge injunction under § 524(a)(2) can be held in contempt under § 105(a).  "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.  The burden then shifts to the contemnors to demonstrate why they were unable to comply." In re Bennett, 298 F.3d at 1069.  In Bennett, the Ninth Circuit went on to say that "[a]s discussed by the Eleventh Circuit in Hardy, to justify sanctions, the movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." Id. (citing In re Hardy, 97 F.3d at 1390 (citing Jove Eng'g, Inc. v. Internal Revenue Serv., 92 F.3d 1539, 1555 (11th Cir. 1996))).

Later, in Dyer the Ninth Circuit again cited Hardy in connection with its analysis regarding the distinction between sanctions authorized for a "willful" violation of the automatic

-20-

stay under § 362(k) and those imposed under the bankruptcy court's contempt power contained in § 105(a).  The Ninth Circuit explained that "[i]n determining whether the contemnor violated the stay, the focus 'is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue.'"  322 F.3d at 1190 (citing In re Hardy, 97 F.3d at 1390; McComb v. Jacksonville Paper Co., 336 U.S. 187, 191 (1949) (Because civil contempt serves a remedial purpose, "it matters not with what intent the defendant did the prohibited act.")).  The Ninth Circuit subsequently noted:

> Under both [§ 362(k) and § 105(a)], the threshold question regarding the propriety of an award turns not on a finding of 'bad faith' or subjective intent, but rather on a finding of 'willfulness,' where willfulness has a particularized meaning in this context:
>
> '[W]illful violation' does not require a specific intent to violate the automatic stay.  Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.'

322 F.3d at 1191 (quoting Havelock v. Taxel (In re Pace), 67 F.3d 187, 191 (9th Cir. 1195)) (citing In re Hardy, 97 F.3d at 1390).

The Dyer court further expounded on the actual knowledge aspect of "willful" for contempt by noting that unlike § 362(k), where a party with knowledge of bankruptcy proceedings is charged with knowledge of the automatic stay, in the context of contempt, actual knowledge of the automatic stay is required. Id. at 1191-92 ("Generally, a party cannot be held in contempt for violating an injunction absent knowledge of that

-21-

injunction."). Applying these principles, the Ninth Circuit declined to affirm the bankruptcy court's decision finding Mr. Lindblade and his attorney in contempt because it was not clear that they were aware of the automatic stay injunction at the time they recorded a deed of trust. The court opined: "They may not have been familiar with that particular Code provision." Id. at 1191;[10] see also In re Zilog, 450 F.3d at 1008 (noting that Dyer "simply reiterates the well-established proposition that only actual knowledge of the discharge injunction suffices for a finding of contempt").

Three years later in Zilog, the Ninth Circuit again reiterated its approval of Hardy's two-part test for finding a willful violation of the discharge injunction as stated in Bennett and Dyer. In re Zilog, 450 F.3d at 1007, 1008 n.12 (noting that a contempt order entered for violation of the automatic stay or discharge injunction is governed by the same standards, namely those applicable to all civil contempt proceedings). In Zilog, the Ninth Circuit provided further guidance on the "actual knowledge" requirement under the first prong of the test. First, the court made clear that whether a party has actual knowledge of the injunction is a fact-based inquiry and must be found; it can neither be presumed nor imputed. In re Zilog, 450 F.3d at 1007-08. Second, the Ninth Circuit further explained there must be evidence showing that the alleged contemnor was aware of the discharge injunction and that it was applicable to his or her claim. Id. at 1009.

_____

[10] Ultimately the Ninth Circuit affirmed on a different ground which is not relevant here.

-22-

To be held in contempt, the [alleged contemnors] must not only have been aware of the discharge injunction, but must also have been aware that the injunction applied to their claims. To the extent that the deficient notices led the [alleged contemnors] to believe, even unreasonably, that the discharge injunction did not apply to their claims because they were not affected by the bankruptcy, this would preclude a finding of willfulness. Id. at n.14.

Taken together, Bennett, Dyer, and Zilog, demonstrate that the Ninth Circuit has crafted a strict standard for the actual knowledge requirement in the context of contempt before a finding of willfulness can be made. This standard requires evidence showing the alleged contemnor was aware of the discharge injunction and aware that it applied to his or her claim. Whether a party is aware that the discharge injunction is applicable to his or her claim is a fact-based inquiry which implicates a party's subjective belief, even an unreasonable one. Of course, subjective self-serving testimony may not be enough to rebut actual knowledge when the undisputed facts show otherwise. See Chionis v. Starkus (In re Chionis), BAP No. CC-12-1501-KuBaPa, 2013 WL 6840485, at *6 (9th Cir. BAP Dec. 27, 2013) (reversing the bankruptcy court's finding that actual knowledge of the discharge injunction was not shown based on alleged contemnor's self-serving testimony when the undisputed facts showed otherwise).

With respect to the second prong - the intent requirement for a finding of willfulness - the analysis concerning a "willful" violation of the discharge injunction is the same as a finding of willfulness in connection with violation of the automatic stay under § 365(k). In connection with the second prong's intent requirement, we have previously observed that

-23-

"the bankruptcy court's focus is not on the offending party's subjective beliefs or intent, but on whether the party's conduct in fact complied with the order at issue." Rosales v. Wallace (In re Wallace), BAP No. NV-11-1681-KiPaD, 2012 WL 2401871, at *5 (9th Cir. BAP June 26, 2012) (citing Bassett v. Am. Gen. Fin. (In re Bassett), 255 B.R. 747, 758 (9th Cir. BAP 2000), rev'd on other grounds, 285 F.3d 882 (9th Cir. 2002) (stating that courts have applied an objective test in determining whether an injunction should be enforced via the contempt power) (citing In re Hardy, 97 F.3d at 1390); see also In re Dyer, 322 F.3d at 1191 (noting that a "willful violation" does not require a specific intent to violate the automatic stay).

Accordingly, each prong of the Ninth Circuit's two-part test for a finding of contempt in the context of a discharge violation requires a different analysis, and distinct, clear, and convincing evidence[11] supporting that analysis, before a finding of willfulness can be made. This is consistent with the Ninth Circuit's reluctance "to hold an unwitting creditor in contempt." In re 1601 W. Sunnyside Dr. #106, LLC, 2010 WL 5481080, at *4 (Bankr. D. Idaho Dec. 30, 2010).

**B.    The Ybarra Rule**

While a discharge in bankruptcy generally relieves a debtor from all prepetition debts, the Ninth Circuit has adopted a

---

[11] The clear and convincing evidence standard requires the moving party to "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable.'" Colorado v. New Mexico, 467 U.S. 310, 316 (1984). Factual contentions are highly probable if the evidence offered in support of them "instantly tilt[s] the evidentiary scales in the affirmative when weighed against the evidence [the non-moving party] offered in opposition." Id.

-24-

different standard for determining for discharge purposes when an attorney's fee claim arises. "Under that standard, even if the underlying claim arose prepetition, the claim for fees incurred postpetition on account of that underlying claim is deemed to have arisen postpetition if the debtor 'returned to the fray' postpetition by voluntarily and affirmatively acting to commence or resume the litigation with the creditor." Bechtold v. Gillespie (In re Gillespie), 516 B.R. 586, 591 (9th Cir. BAP 2014) (citing In re Ybarra, 424 F.3d at 1026-27). The rule is invoked to prevent a debtor from using the discharge injunction as a sword that enables him or her to undertake risk-free postpetition litigation at others' expense. Id. (citing In re Ybarra, 424 F.3d at 1026). "The Ybarra rule applies regardless of whether the litigation begins prepetition or postpetition, regardless of the nature of the underlying claim, and regardless of the forum in which the postpetition litigation takes place." Id. at 591-92 (citing In re Ybarra, 424 F.3d at 1023-24).

**C. Analysis**

Due to the Ybarra rule, the scope of the discharge order here was ambiguous with respect to the post-discharge attorneys' fees and costs. Whether a debtor voluntarily returns to the fray under the Ybarra rule is a factual question subject to dispute as demonstrated by the state and bankruptcy courts' ruling on the one hand, and the district court's ruling the other hand. A creditor seeking to invoke the Ybarra rule would necessarily need to seek such a determination from a court.

Section 524(a)(2) clearly was not designed to prohibit

actions that seek an _Ybarra_ determination. We have previously said that a party seeking a bankruptcy court determination regarding the scope of the discharge should file an adversary complaint seeking declaratory relief. See _Ruvacalba v. Munoz (In re Munoz)_, 287 B.R. 546, 556 (9th Cir. BAP 2002). Appellants' request for a _Ybarra_ ruling in the state court was essentially the same as a request for declaratory relief regarding the scope of the discharge. We fail to see how following this procedure equates to a violation of § 524(a)(2). On Debtor's novel theory of the discharge, any person, creditor or non-creditor, who sought declaratory relief regarding the scope of the discharge injunction would forever be barred, under pain of contempt sanctions, from filing an adversary proceeding to seek a court's ruling on the issue.[12] Appellants should be praised, not sanctioned, for having followed a correct procedure to resolve the _Ybarra_ issue.

Further, once the state court decided that the discharge

_____

[12] At oral argument, Debtor's attorney took the position that Appellants proceeded in the state court at their own risk since only the bankruptcy court had authority to decide the scope of the injunction. This proposition is not correct. In _Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLC (In re Pavelich)_, 229 B.R. 777 (9th Cir. BAP 2000), we noted: "With respect to the discharge itself, state courts have the power to construe the discharge and determine whether a particular debt is or is not within the discharge." _Id._ at 783. The Panel further stated that if the state court construes the discharge correctly, its judgment will be enforced. However, if the state court construed the discharge incorrectly, then its judgment may be void and subject to collateral attack in federal court. To the extent Debtor collaterally attacked the state court's ruling in the bankruptcy court, the bankruptcy court not only upheld the state court's ruling, but independently found that he had entered the fray under _Ybarra_.

-26-

did not bar Appellants' claim for attorneys' fees, Appellants were entitled to rely on that decision. A party who acts in reliance on a facially valid determination that the discharge does not apply cannot be guilty of "willfully" violating the discharge injunction.[13]

Even if Appellants had not raised the Ybarra question to the state court, we would overturn the bankruptcy court's decision on other grounds. Although the bankruptcy court recited the Zilog test, it applied the wrong legal standard for determining whether Appellants had the sort of actual knowledge necessary for a finding of willfulness. As a result, its factual findings were clearly erroneous.

Despite citing the two-part test in Hardy with approval in Bennett, Dyer, and Zilog, the Ninth Circuit has never adopted the test word for word. Under the first prong, the Hardy test states that a defendant will be held in contempt if it "knew that the [discharge injunction] was invoked." Since adopting the Hardy test, the Ninth Circuit has always replaced the word "invoked" with the word "applicable." Therefore, the bankruptcy court erred when it relied on the Hardy test rather than using the Ninth Circuit's test as restated.

By adopting the Hardy test, the bankruptcy court improperly

[13] One might argue that, because a state court decision incorrectly construing the scope of the discharge is not only erroneous, but also void, In re Pavelich, 229 B.R. at 782, reliance on such a determination is no defense. But, as we explain below, in order to recover for a violation of the discharge injunction, the debtor must establish the actor's subjective state of mind. In this case, there is no reason to think that Appellants subjectively knew or believed that the state court's decision was wrong.

-27-

"charged" Appellants with actual knowledge of the discharge injunction simply because it had been entered at the time they sought their attorneys' fees in the state court. Rather than conducting any inquiry into whether Appellants were aware that the discharge injunction applied to their fee request as instructed in Zilog, the court imputed such awareness by strict liability. It is certainly possible that Appellants held an objectively reasonable belief that, for reasons specific to Debtor's conduct in the state court, the discharge injunction did not apply to their post-discharge attorneys' fee request under the Ybarra rule. In any event, as stated above, they followed the proper procedure by seeking the court's decision on the scope of the discharge.

The bankruptcy court also improperly found that Appellants were not "insulated" from a willfulness finding after the state court and bankruptcy court found in their favor - apparently on the basis that the state court got it wrong and the bankruptcy court was reversed by the district court. This reasoning is more in line with the standard for finding a willful violation of the automatic stay under § 362(k), where a legitimate dispute as to a creditor's right to take the action that violates the automatic stay may not relieve a willful violator of the consequences of his or her act.

Finally, the court concluded that Appellants' subjective or good faith beliefs were irrelevant. Although this strict liability analysis may be either consistent with the standards for a willful violation of the automatic stay because there is no specific intent requirement embedded in § 362(k) or with an

analysis under the second prong of the test for deciding willfulness, it cannot apply to the first prong of the discharge violation test which requires actual knowledge of applicability.

Taken together, the bankruptcy court's "strict liability" analysis is closer to the standards for finding a willful violation of the automatic stay under § 362(k), which is the derivation of the Hardy test. Alternatively, at best, the court's analysis conflated the objective inquiry under the second prong of the willfulness test regarding intent with the fact intensive inquiry under the actual knowledge requirement in the first prong.

Due to the application of an improper legal standard, the bankruptcy court's factual findings regarding Appellants' actual knowledge are clearly erroneous and not supported by the record. It is undisputed that Appellants had actual knowledge that Debtor's discharge had been entered at the time they sought the post-discharge attorneys' fees under the Ybarra rule in the state court. However, they could not possibly have been aware that the discharge injunction was applicable to their fee request until the Ybarra question was adjudicated. Once the bankruptcy court confirmed the state court's ruling and made its own independent decision on the matter, ruling in Appellants favor, all doubts regarding whether the discharge injunction applied were resolved; i.e., under Ybarra, the post-discharge fee request fell outside the scope of the discharge injunction. The bankruptcy court's ruling was binding on Debtor and SPBC

-29-

until it was overruled.[14]

This is not a case where Appellants knew of the discharge injunction and continued to press their attorneys' fee claim in the state court under the assumption that the discharge injunction did not apply to them. Rather, all along the way, they sought a judicial determination that the discharge injunction did not apply. We fail to see how the Zilog standard for actual knowledge is met under these facts.

In the end, there is no clear and convincing evidence in the record that shows Appellants had actual knowledge that the discharge injunction applied to their post-discharge fee request in the state court. The facts actually suggest the opposite. Although the discharge order was in place at the time Appellants made their fee request in the state court, the order itself did not advise Appellants of the scope of the injunction under the Ybarra rule. Nor could it, since that was up to a court of competent jurisdiction to decide the question as to whether Debtor voluntarily returned to the fray.

## VI. CONCLUSION

For the reasons stated, we REVERSE the bankruptcy court's finding of contempt and VACATE its judgment awarding sanctions.

---

[14] While Debtor suggests that Appellants were dilatory in vacating the Supplemental Judgment, this was not a basis for the bankruptcy court's ruling.