See also 2017 WL 728687.

**IN RE: Charles Lee ROSE and Nicole Marie Rose, Debtors.**

**Case No. 09–33798–MKN**

United States Bankruptcy Court, D. Nevada.

Date: January 19, 2017, Time: 1:30 p.m.

Signed January 26, 2017

Brett A. Axelrod, Teodora H. Popova, Fox Rothschild LLP, David A. Stephens, Stephens Gourley & Bywater, Matthew C. Zirzow, Larson & Zirzow, David J. Winterton, Las Vegas, NV, for Debtor.

Marty G. Baker, CM Retail Management Inc., Phoenix, AZ, Eddie R. Jimenez, Aldridge Pite, LLP, San Diego, CA, Elan S. Mizrahi, Titus Brueckner & Levine PLC, Scottsdale, AZ, Jeremy T. Bergstrom, Bergstrom Law, Ltd., Michael W. Chen, Mccarthy Holthus, LLP, Gina M. Corena, Law Office of Gina M. Corena, Esq., Blakeley E. Griffith, Bob L. Olson, Snell & Wilmer L.L.P., Krista J. Nielson, Law Office of Gina M. Corena, PLLC, Stacy H. Rubin, Aldridge Pite, LLP, Brian D. Shapiro, Law Office of Brian D. Shapi-

ro, Rollin G. Thorley, Charles C. Lobello, Las Vegas, NV, for Creditor.

**ORDER ON REORGANIZED DEBTORS' MOTION FOR: (I) PARTIAL SUMMARY JUDGMENT AS TO LIABILITY AGAINST WELLS FARGO BANK, N.A. AND WELLS FARGO HOME MORTGAGE RE: VIOLATION OF THE DISCHARGE INJUNCTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 524(a)(2); OR (II) IN THE ALTERNATIVE, FOR AN ORDER TREATING SPECIFIED FACTS AS ESTABLISHED [1]**

Honorable Mike K. Nakagawa, United States Bankruptcy Judge

On January 19, 2017, a hearing was held on the Reorganized Debtors' Motion for: (I) Partial Summary Judgment as to Liability Against Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage Re: Violation of the Discharge Injunction Pursuant to 11 U.S.C. §§ 105(a) and 524(a)(2); or (II) in the Alternative, for an Order Treating Specified Facts as Established ("Debtors' MSJ"). (ECF No. 698).[2] The appearances of counsel were noted on the record. Opposition to the motion had been filed by Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage (together "Wells Fargo"). (ECF No. 767).[3] A reply had been filed by the above-captioned Debtors. (ECF No. 819).[4] After arguments were presented, the matter was taken under submission.[5]

The court having considered the Debtors' MSJ, together with the arguments and representations of counsel, concludes that the motion must be denied.

1. In this Order, all references to "ECF No." are to the numbers assigned to the documents filed in the case as they appear on the docket maintained by the clerk of the court. All references to "Section" are to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101–1532. All references to "FRBP" are to the Federal Rules of Bankruptcy Procedure.

2. Debtors' MSJ is accompanied by a Separate Statement of Undisputed Facts, etc., ("Debtors' SUF") (ECF No. 710) along with a Supplemental Declaration of Nicole Marie Rose, etc., (ECF No. 709), both in support of their motion.

3. Wells Fargo's opposition ("WF Opposition") was accompanied by a response to the Debtors' SUF. (ECF No. 768). That response was then followed by an amendment to that response (ECF No. 781), as well as a Declaration of Blakeley E. Griffith, Esq., etc., all in support of the opposition to the Debtors' MSJ.

4. Debtors' reply was accompanied by the Declaration of Matthew C. Zirzow, Esq., etc. (ECF No. 820).

5. The instant motion seeks to determine certain issues in connection with the Debtors' efforts to obtain contempt sanctions against Wells Fargo, as well as Rushmore Loan Management Services LLC ("Rushmore") and MTGLQ Investors LLP ("MTGLQ"). Debtors reopened the instant proceeding, alleging that the respondents have violated the Chapter 11 discharge that was entered on April 27, 2015 (ECF No. 484). That discharge was entered based on a determination that the Debtors had complied with their Chapter 11 plan of reorganization ("Plan") (ECF No. 300) that had been confirmed at a hearing held on February 19, 2014 ("Plan Confirmation Order"). (ECF No. 357). Confirmation of that plan had been preceded by the entry of a specific order in October 2012 to value certain real property ("Valuation Order") (ECF No. 220) that served as collateral on separate obligations owed to two different creditors. Debtors' requests for sanctions against Wells Fargo (ECF No. 550), as well as Rushmore and MTGLQ (ECF No. 489), are scheduled for a multi-day evidentiary hearing that will commence on February 23, 2017. (ECF No. 744). After the Debtors filed the instant motion, Wells Fargo, joined by Rushmore and MTGLQ, filed a separate motion seeking to convert this reopened Chapter 11 proceeding to a Chapter 7 liquidation (ECF No. 667) and a separate motion (ECF No. 787) to set aside the Valuation Order. The instant motion, along with both of the latter motions were scheduled to be heard on January 19, 2017.

Debtors maintain that there are no genuine issues of material fact and that they are entitled, as a matter of law, to sanctions against Wells Fargo for violation of the discharge injunction. In this reopened proceeding, the Debtors allege that Wells Fargo committed six separate violations of the discharge injunction on the following dates: April 16, 2015, May 18, 2015, June 16, 2015, June 29, 2015, July 16, 2015, and July 30, 2015. See Debtors MSJ at ¶¶ 21, 22, 24, 25, 31, and 32. Debtors assert that Wells Fargo's conduct on these specific occasions constitute "six (6) distinct intentional acts in violation of the Discharge Injunction and the Confirmation Order when it sought to collect money in excess of the Plan treatment as confirmed by the Confirmation Order." Id. at ¶ 73 (emphasis added).

■ The court recently entered an order continuing Wells Fargo's separate Motion to Set Aside Valuation Order ("WFB Set Aside Order") (ECF No. 883) to February 8, 2017, for the purpose of scheduling an evidentiary hearing on a limited issue. For reasons discussed therein, see WFB Set Aside Order at 6:17 to 8:17, the amount of money required to satisfy Wells Fargo's secured and unsecured claims under the Debtors' confirmed Plan is uncertain: it was to be based on a value of the Linda Avenue Property, apparently determined as of May 15, 2014.[6] Neither the language of the Plan, nor the provisions of the Plan Confirmation Order specifies that value. There also is no motion of record to value the Linda Avenue Property as of the required date.[7] Additionally, there is no evidence in the record establishing that the Debtors and Wells Fargo reached a stipulation as to the value of the Linda Avenue Property as of the required date.[8] Under these circumstances, there is at least a material factual dispute over the amount that the Debtors were required to pay Wells Fargo under the language of their own Plan.[9]

On the same date, four additional motions were scheduled to be heard seeking summary judgment or partial summary judgment on the issue of whether sanctions for violation of the Chapter 11 discharge injunction is appropriate. Numerous evidentiary and procedural objections also were noticed to be heard on the same date.

6. Debtors' confirmed Plan was filed by their original bankruptcy counsel who had been replaced prior to plan confirmation. Replacement bankruptcy counsel did not amend the Plan and it was confirmed after the objection raised by the Class 2 secured creditor was settled. The terms of that settlement were included in the Plan Confirmation Order, but there were no changes to the treatment of Wells Fargo under Class 3. After replacement counsel obtained entry of the Debtors' discharge, Debtors then obtained the services of two different law firms to seek sanctions for violation of the discharge injunction. It appears that neither of the law firms currently representing the Debtors, however, were involved in drafting and confirming the very Plan they assert was violated by Wells Fargo.

7. Likewise, the WFB Set Aside Order itself seeks relief from an order that does not appear to even affect the outcome of the sanctions being sought by the Debtors. Id. at 8:18 to 9:3.

8. Prior to plan confirmation, the Debtors did reach a stipulation with creditor Bank of New York Mellon as to the value of that creditor's collateral and amount of its claim, which were specifically included in the Plan Confirmation Order. See WFB Set Aside Order at 7 n.9.

9. The court could be mistaken on the required date of valuation for Wells Fargo's collateral. Section 4.3 of the confirmed Plan expressly states that "Class 3 consists of all of the Allowed Secured Claim of Wells Fargo on the 405 Linda Property." Section 1.7 of the confirmed Plan specifies that an "Allowed Secured Claim" will be "determined in accordance with Section 506(a) of the Bankruptcy Code." Section 4.3 of the confirmed Plan also expressly states that "Wells Fargo will receive on account of such claim deferred cash payments totaling at least the allowed amount of

Resolution of this factual uncertainty obviously impacts the Debtors' core allegation that Wells Fargo sought to collect more than was permitted by the confirmed Plan: if the amount to be paid is unknown, how did Wells Fargo violate the Plan by seeking a particular amount? Moreover, because the Debtors' plan provided for Wells Fargo to retain its lien against the Linda Avenue Property until the allowed amount of the claim was paid, there are material issues of fact as to whether Wells Fargo intended to collect the claim as a personal liability of the Debtors rather than to require satisfaction of its lien. Compare ZiLOG, Inc. v. Corning (In re ZiLOG), 450 F.3d 996, 1007 (9th Cir. 2006)(debtor has the burden of showing that the creditor (1) knew the discharge injunction was applicable [10] and (2) intended the actions that violated the injunction), with Nelson v. Parker (In re Nelson), 2016 WL 7321196 at *7 (9th Cir. BAP Dec. 15, 2016)("In this circuit, there must be evidence showing that the alleged contemnor was aware of the discharge injunction **and** aware that it applied to his or her claim." (Emphasis in original.)).[11] These uncertain-

such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in such property..." The term "effective date of the plan," i.e., May 15, 2014, could refer simply to the date for determining the amount of the deferred cash payments discounted to present value. If that is the better reading of the plan language, however, the allowed amount of Wells Fargo's claim under Section 506(a) still would have to be based on a valuation of the Linda Avenue Property. Had that valuation been completed or agreed prior to the alleged violations of the discharge injunction? Nothing in the record suggests that a valuation has ever occurred.

**10.** Because the discharge injunction is imposed by Section 524(a)(2) rather than a court order specifically directed at the creditors, the circuit panels in ZiLOG as well as Dyer recognized that the individual creditors might not be aware of that statutory injunction. See ZiLOG, 450 F.3d at 1009 and Dyer, 322 F.3d at 1191–92. In order to find that the individuals knew the discharge injunction was applicable, the ZiLOG panel remanded the proceeding to the bankruptcy court for a determination of whether the individuals were aware that the discharge injunction applied to their claims. 450 F.3d at 1009–10 & n.14.

**11.** In Nelson, the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") recently issued a split decision reversing a bankruptcy court's discharge sanctions against an attorney who pursued the debtor for attorneys fees on a personal injury claim that were earned in part through pre-bankruptcy services. Although the attorney acknowledged that he was aware of the discharge injunction, he repeatedly asserted that he did not know that the discharge injunction applied to any postpetition services. 2016 WL 7321196 at *8. Even though the bankruptcy court applied the ZiLOG standards, the BAP majority concluded that the evidentiary record was insufficient to find that the attorney subjectively knew that the discharge injunction applied to his claims. 2016 WL 7321196 at *8. The dissent vigorously disagreed that the evidentiary record was insufficient. 2016 WL 7321196 at *9–11. The dissent believed that the majority had misapplied the circuit's analysis in ZiLOG, and observed as follows: "Furthermore, the majority arguably reads In re ZiLOG, Inc. too broadly. Under the majority's reading, Parker avoids a finding of contempt simply by testifying (credibly) that he did not subjectively believe that the discharge applied to his attorney fees claims, no matter how misguided or unreasonable his belief might have been. I question whether In re ZiLOG Inc. intended such an expansive reading of its holding, given that such a reading seemingly would render the bankruptcy discharge all but toothless." 2016 WL 7321196 at *11.

All of the major decisions in this circuit addressing the standards for a discharge injunction violation primarily involve creditors who are individuals. See ZiLOG (three employees whose claims were discharged by corporate debtor's confirmed Chapter 11 plan); Lindblade v. Knupfer (In re Dyer), 322 F.3d 1178 (9th Cir. 2003)(civil contempt standards applied to two individuals who violated automatic stay in Chapter 7 proceeding); Renwick v. Bennett (In re Bennett), 298 F.3d

ties alone preclude entry of partial summary judgment as to Wells Fargo's asserted liability for violation of the discharge injunction.

■■■■ These factual uncertainties also dovetail with Wells Fargo's assertion that the doctrine of unclean hands should preclude the Debtors from obtaining sanctions. "Unclean hands" is an equitable doctrine designed to prevent the court from becoming a participant in or abettor of inequitable conduct. See Precision Inst. Mfg. Co. v. Automotive Maintenance Mach. Co., 324 U.S. 806, 813, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). In this circuit, the doctrine applies in bankruptcy cases because bankruptcy courts are courts of equity. See In re Harwood, 2016 WL 1436235 at *5 (9th Cir. BAP Apr. 8, 2016). The doctrine is applicable in connection with

the discharge and may preclude a plaintiff with unclean hands from preventing a less culpable individual debtor from discharging a specific debt. See, e.g., Northbay Wellness Group, Inc. v. Beyries, 789 F.3d 956, 959 (9th Cir. 2015)(unclean hands "requires balancing the alleged wrongdoing of the plaintiff against that of the defendant, and 'weigh[ing] the substance of the right asserted by [the] plaintiff against the transgression which, it is contended, serves to foreclose that right.").[12] In this instance, Wells Fargo argues, inter alia, that the Debtors misrepresented that they had completed the requirements of their confirmed Plan when they applied for entry of their Chapter 11 discharge. See WF Opposition at ¶¶ 8, 9, 10, 11, 12, 13 and 14. If the Debtors in fact engaged in wrongdoing to obtain the very Chapter 11 dis-

1059 (9th Cir. 2002) (civil contempt sanctions applied to two individuals who violated separate Chapter 7 discharges obtained by co-obligors); In re Taggart, 548 B.R. 275 (9th Cir. BAP 2016)(civil contempt sanctions sought against three individuals and related entity for violation of Chapter 7 discharge). None of these decisions address the manner in which a subjective belief requirement must be met with respect to a non-individual creditor alleged to have violated the discharge injunction. It is one thing for individuals to testify as to their subjective beliefs, but quite another for a corporate representative to testify as to the subjective belief of a corporation. For this reason, perhaps the subjective belief discussion in Dyer, ZiLOG, Taggart and Nelson does not even apply to non-individual creditors. The court agrees with the dissent in Nelson that application of a subjective belief element opens the door to the assertion of too many "Sargent Schultz" defenses, compare HSBC Bank USA v. Taher, 2011 WL 6813628 at *22 (N.Y. Sup. Dec. 22, 2011)(Schack, J.)("I know nothing! Nothing!"), at the expense of the peace of mind that the discharge is supposed to provide to individual debtors.

12. The court is mindful that the injunction arising from a bankruptcy discharge is statutorily prescribed by Section 1124(a)(2) and is not the result of the exercise of the bankrupt-

cy court's equitable discretion. While non-bankruptcy statutes may authorize a court to issue an injunction to prevent further violation of the statute, the issuance of an injunction under those statutes is not automatic and courts are still required to determine whether equity supports the imposition of an injunction. See, e.g., eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (U.S. 2006)(issuance of permanent injunction to prevent continuing violation of the Patent Act still requires court to apply traditional test for injunctive relief); Weinberger v. Romero–Barcelo, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982)(issuance of preliminary injunction against the U.S. Navy to prevent continuing violation of Federal Water Pollution Control Act was not required to carry out the purposes of the statute). By contrast, an injunction arises through bankruptcy as soon as the debtor receives a discharge and the injunction applies to any act to "collect, recover, or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). Although the discharge injunction is created by statute, it is well established that the enforcement of the discharge injunction through its contempt authority requires the bankruptcy court exercise its equity jurisdiction through Section 105(a). See Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002).

charge they now seek to enforce, such wrongdoing might outweigh Wells Fargo's purported misconduct in seeking to enforce its lien. See Ellenburg v. Brockway, Inc., 763 F.2d 1091, 1097 (9th Cir. 1985)("In applying the doctrine, '[w]hat is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendants." (Emphasis added.)).[13]

■ Wells Fargo also argues that none of the six separate and specific acts asserted by the Debtors constituted violations of the discharge injunction, or caused any harm for which sanctions are appropriate. See WF Opposition at ¶¶ 15 to 18, 19 to 25, 26 to 31, 32 to 38. Because there are material issues of fact going to each of the specific acts alleged to have violated the discharge injunction, summary judgment with respect to these matters must be denied. Moreover, various threshold and potentially dispositive factual disputes discussed above also warrant denial of summary judgment as to these separate arguments.

**IT IS THEREFORE ORDERED** that Reorganized Debtors' Motion for: (I) Partial Summary Judgment as to Liability Against Wells Fargo Bank, N.A. and Wells Fargo Home Mortgage Re: Violation of the Discharge Injunction Pursuant to 11 U.S.C. §§ 105(a) and 524(a)(2); or (II) in the Alternative, for an Order Treating Specified Facts as Established, Docket No. 698, be, and the same hereby is, **DENIED.**

13. Unless the Debtors actually seek damages for violation of the Plan Confirmation Order based on the attempted collection of an amount that is not even specified by their own Plan, the court likely would limit any evidence on the unclean hands issue to the Debtors' conduct in obtaining the Discharge Order.