

FILED

OCT 24 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. SC-18-1064-FSKu |
| MICHAEL DON COBBS, | Bk. No. 17-01830-CL7 |
| Debtor. | |
| MICHAEL DON COBBS, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| NISSAN MOTOR ACCEPTANCE CORPORATION, | |
| Appellee. | |

Argued on July 27, 2018 at Pasadena, California
Submitted on September 11, 2018

Filed – October 24, 2018

Appeal from the United States Bankruptcy Court
for the Southern District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Christopher B. Latham, Bankruptcy Judge, Presiding

———————

Appearances:    Michael G. Doan argued for appellant Michael Don Cobbs; Stephen L. Chesney of Vanlochem & Associates argued for appellee Nissan Motor Acceptance Corporation.

———————

Before: FARIS, SPRAKER, and KURTZ, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Michael Don Cobbs appeals the bankruptcy court's denial of his request for sanctions against appellee Nissan Motor Acceptance Corporation ("NMAC") based on alleged violations of the discharge injunction. He argues that the bankruptcy court applied the wrong legal standard, erred in issuing an order to show cause, and erroneously stayed discovery. We AFFIRM as to these issues.

Mr. Cobbs also argues that the bankruptcy court erred in finding that NMAC did not know that the discharge injunction applied after his counsel sent a letter demanding that NMAC cease sending billing statements. Although we have doubts about Mr. Cobbs' and his counsel's tactics, we agree that the court should not have decided the factual question of NMAC's subjective knowledge without holding an evidentiary

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

hearing. Accordingly, we REVERSE and REMAND on the issue of NMAC's subjective knowledge that the discharge injunction applied.

## FACTUAL BACKGROUND

### A.    Mr. Cobbs' chapter 7 bankruptcy

On March 31, 2017, Mr. Cobbs filed a chapter 7 petition and scheduled a leased 2015 Nissan Sentra (the "Vehicle") as personal property, with NMAC holding a secured claim. Mr. Cobbs stated his intention to retain the Vehicle and assume the lease.

Throughout his bankruptcy case, Mr. Cobbs used a plethora of addresses for NMAC. This began with his initial bankruptcy documents. In his Schedule D and creditor matrix, he said that NMAC's address was 2901 Kinwest Parkway, Irving TX 75063 ("Kinwest Parkway Address"). He says he obtained this address from a credit report. In his statement of financial affairs, he provided two addresses for NMAC: the Kinwest Parkway Address and P.O. Box 660360, Dallas TX 75266-0360 ("Designated Correspondence Address"), which was an address specified for correspondence on the billing statements. Mr. Cobbs does not explain why he listed different addresses for NMAC in different parts of his initial documents.

In any event, the Bankruptcy Noticing Center automatically redirected notice of Mr. Cobbs' bankruptcy filing to an address designated by NMAC, P.O. Box 660366, Dallas TX 75266-0366 ("Designated

Bankruptcy Address").

On April 5, 2017, NMAC received notice of Mr. Cobbs' bankruptcy at its Designated Bankruptcy Address. Based on Mr. Cobbs' stated intention to retain the Vehicle, NMAC's counsel contacted Mr. Cobbs to offer a reaffirmation agreement. It sent copies of the agreement via e-mail to Mr. Cobbs' counsel on May 2. Mr. Cobbs and his counsel did not respond.

On May 4, Mr. Cobbs called NMAC and said that he did not want to retain the Vehicle and would return it to the dealership. NMAC instructed Mr. Cobbs to provide the contact information of the person at the dealership to whom he surrendered the Vehicle.

Within a matter of days, Mr. Cobbs changed his mind. On May 9, Mr. Cobbs telephoned NMAC and said that he wanted to keep the Vehicle.

On May 18, NMAC's counsel sent Mr. Cobbs' counsel another copy of the reaffirmation agreement. Despite a follow-up e-mail from NMAC's counsel on June 19, Mr. Cobbs' counsel yet again did not respond.

On June 29, Mr. Cobbs telephoned NMAC to ask when he would begin receiving monthly statements. That same day, Mr. Cobbs' counsel faxed NMAC an authorization to resume sending monthly statements to Mr. Cobbs. It instructed: "Please feel free to resume sending Mr. Michael D. Cobbs his monthly statements to his residence . . . ."

Contrary to Mr. Cobbs' stated intention, he did not assume the Vehicle lease. *See* § 521(a)(6), (d). The bankruptcy court granted Mr. Cobbs

his discharge on July 5, 2017. NMAC received notice of the discharge at its Designated Bankruptcy Address on July 8.

On July 11, Mr. Cobbs called NMAC to ask again when he would begin receiving monthly statements. But within a few days, he changed his mind for the fourth time. On July 17, he asked his counsel, Michael G. Doan, to arrange for the Vehicle's surrender. Although Mr. Cobbs had told NMAC that he would surrender the Vehicle at the dealership, Mr. Doan arranged for a company called DH Wholesale[2] to receive and hold the Vehicle. Mr. Cobbs does not explain why he did not surrender the Vehicle to a Nissan dealership as he had told NMAC he would do.

Mr. Cobbs muddied the waters again when, on July 18, he telephoned NMAC and repeated his prior request for monthly statements. NMAC complied with these requests and sent Mr. Cobbs a billing statement dated July 24, 2017.

Mr. Cobbs delivered the Vehicle to DH Wholesale on July 26. DH Wholesale's agent sent NMAC a Notice of Stored Vehicle to P.O. Box 254648, Sacramento, CA 95865 ("Sacramento PO Box"), which Mr. Cobbs says is NMAC's address on file with the California Department of Motor

---

[2] DH Wholesale had an "arrangement with [Mr. Doan's law firm] to serve as a liaison between debtors and secured creditors to facilitate the transfer of secured vehicles for no charge for a period of seven (7) days."

Vehicles ("DMV").[3] This notice informed NMAC that DH Wholesale was holding the Vehicle. Mr. Doan also sent NMAC a Notice of Surrender and Demand for Pickup ("Notice of Surrender") to its Kinwest Parkway Address. He informed NMAC that Mr. Cobbs had surrendered the Vehicle to DH Wholesale, which would hold the Vehicle for seven days, after which time DH Wholesale could impose a statutory lien and Mr. Cobbs could seek sanctions. Neither of these notices explicitly withdrew Mr. Cobbs' prior requests for monthly statements. Neither was sent to NMAC's Designated Bankruptcy Address or Designated Correspondence Address.

NMAC sent Mr. Cobbs a billing statement dated August 22, 2017.

As reflected in NMAC's collection log, it appears that Mr. Doan's office called NMAC and requested a facsimile number. An entry dated September 1, 2017 states that NMAC gave Mr. Doan's office a fax number. On September 6, 2017, Mr. Doan sent a letter to NMAC stating that the July 24 and August 22 billing statements violated the discharge injunction. He demanded that NMAC cease sending statements and threatened to seek sanctions. Mr. Doan faxed the letter to NMAC at the number it gave to his office. Mr. Doan also mailed the letter to NMAC at P.O. Box 742657, Cincinnati OH 45274 ("Cincinnati PO Box"). Mr. Doan admitted in the bankruptcy court that this is a payment-only lock box address, but

---

[3] As we explain in note 5 below, this notice suffers from multiple inconsistencies.

NMAC's collection log also indicates that it received the letter on September 8 and forwarded it to "BK BOX FOR REVIEW."

On September 13, 2017, NMAC mailed Mr. Cobbs a form for him to sign and return in order to confirm his request that NMAC continue sending monthly invoices. The form indicated that NMAC thought Mr. Cobbs was still in possession of the Vehicle. The form stated in bold type that NMAC "is aware of either your pending Bankruptcy proceedings or discharge in Bankruptcy and delivery of this Request and Authorization to Receive Monthly Statements is not an attempt by [NMAC] to collect a debt in violation of the automatic stay or discharge injunction."

On September 14, the California DMV gave DH Wholesale approval to conduct a lien sale of the Vehicle. DH Wholesale gave notice to NMAC at the Sacramento PO Box. A person whose connection (if any) to NMAC is unspecified signed a postal return receipt for the notice on September 22. The lien sale took place on October 10.

In the meantime, NMAC sent Mr. Cobbs another statement dated September 21.

**B. The motion for contempt**

On October 9, 2017, Mr. Cobbs filed a motion for contempt against NMAC ("Motion for Contempt"). He sought monetary sanctions and injunctive relief "based upon the pleadings herein and after an evidentiary hearing. To the extent that NMAC opposes this motion, COBBS further

7

requests that this Court enter a discovery briefing schedule."

Mr. Cobbs alleged that NMAC willfully violated the discharge injunction by sending him the July, August, and September monthly statements and the request for authorization on September 13. He argued that these communications constituted harassment and caused him to suffer depression and trauma.

Mr. Cobbs sent the Motion for Contempt and the associated notice of hearing by U.S. mail to 2710 Gateway Oaks Dr. Ste 150N, Sacramento, CA 95833 ("Service of Process Address"), which is the address listed in the California state records for NMAC's agent for service of process. He did not send it to NMAC's Designated Bankruptcy Address, Designated Correspondence Address, any other address for NMAC which he had previously used, or to NMAC's attorneys who had sent the proposed reaffirmation agreement. Despite the opposition deadline noted in the notice of hearing, NMAC did not file any response.

After Mr. Cobbs filed the Motion for Contempt, NMAC sent Mr. Cobbs monthly statements dated October 23 and November 21. On November 29, it issued a notice of default, which included the following disclaimer language: "Important notice for bankruptcy customers: if your obligation to pay any debt listed in this notice has been discharged in bankruptcy . . . we are not through this document, attempting to collect any amounts from you as a personal liability . . . ." Mr. Doan filed a

supplemental declaration apprising the bankruptcy court of these three communications.

On December 11, the bankruptcy court held a hearing on the Motion for Contempt. NMAC did not appear. On December 13, the court issued an order to show cause ("OSC"). The court found that NMAC likely violated the discharge injunction by sending Mr. Cobbs the July, August, September, October, and November billing statements, the request for authorization, and the notice of default. The court ordered NMAC to show cause why it should not be held in contempt and sanctioned for its apparent ongoing violations of the discharge injunction. It set the matter for hearing and stated that, "[i]f factual disputes remain after that, an evidentiary hearing may be needed."

The bankruptcy court ordered Mr. Cobbs to serve the OSC on NMAC at the Kinwest Parkway Address, the Designated Correspondence Address, the Service of Process Address, and NMAC's corporate offices at One Nissan Way, Franklin, TN 37067. Mr. Cobbs complied.

NMAC responded to the OSC. It said that it sent the billing statements only at Mr. Cobbs' request. It included the declaration of Danny Merritt, an NMAC employee who oversaw Mr. Cobbs' account. Mr. Merritt stated that NMAC is registered with the Bankruptcy Noticing Center to receive all bankruptcy notices at the Designated Bankruptcy Address or at 8900 Freeport Parkway, Irving, TX 75063 ("Freeport Parkway Address").

He stated that none of the relevant filings – the Motion for Contempt, notice of hearing, declaration, supplemental declaration, or debtor's declaration – were served on NMAC at either of the proper addresses. He stated that NMAC did not receive the Motion for Contempt or any of its supporting documents.

Mr. Merritt stated that the Motion for Contempt omitted Mr. Cobbs' multiple requests for monthly statements. He stated that, in the fax dated June 29, 2017, Mr. Cobbs' counsel authorized NMAC to send monthly statements to Mr. Cobbs. In response to this authorization, NMAC resumed sending monthly statements starting in July 2017.

Mr. Merritt also stated that NMAC did not receive Mr. Doan's Notice of Surrender, which was sent to the Kinwest Parkway Address. He stated that NMAC had not used that address for over fourteen years.

Mr. Merritt represented that the Cincinnati PO Box is a lockbox for payments only. He stated that NMAC did not receive any correspondence sent to that address.

Mr. Merritt also produced a collection log that purportedly documented all communication between NMAC and Mr. Cobbs. He recounted Mr. Cobbs' telephone calls to NMAC (which Mr. Cobbs had not disclosed), including:

- Mr. Cobbs' May 4, 2017 telephone call, wherein he stated that he did not want to keep the Vehicle.

- Mr. Cobbs' May 9 telephone call, wherein he changed his mind and stated that he wanted to make payments.

- Mr. Cobbs' June 29 telephone call, wherein he asked when NMAC would resume sending monthly statements.

- Mr. Cobbs' July 11 telephone call, wherein he again asked when he would start receiving monthly statements.

- Mr. Cobbs' July 18 telephone call, wherein he again asked for monthly statements and inquired when his payment was due.

Mr. Merritt said that he did not learn about the OSC until he received Mr. Doan's supplemental declaration on December 14. Only then did NMAC learn that Mr. Cobbs had delivered the Vehicle to DH Wholesale.

## C.    The OSC hearing

The bankruptcy court held a hearing on the OSC on February 12. Mr. Cobbs argued that the court should either immediately sanction NMAC or order further discovery.

The bankruptcy court took the matter under advisement. It stated that, "[i]f the OSC is discharged, that will end the matter. If the OSC is not discharged, there will need to be discovery and an evidentiary hearing" on factual issues. In the meantime, the court stayed further discovery.

## D.    The order dissolving the OSC

The bankruptcy court issued its order dissolving the OSC on March 6, 2018. It stated that "[i]t is beyond cavil that Nissan's claim is subject to the

11

discharge injunction." It held that NMAC had knowledge of the discharge injunction because it received notice of the discharge on July 8 at its Designated Bankruptcy Address.

Nevertheless, it held that Mr. Cobbs did not prove by clear and convincing evidence that NMAC was subjectively aware that its conduct was subject to the discharge injunction. It noted that Mr. Cobbs "engendered much confusion" by vacillating about whether he would assume the Vehicle lease. Additionally, he sent communications to NMAC at various addresses - some "defunct," "inappropriate," or not designated for correspondence - with little consistency. It found that, "[g]iven this matter's ambiguities, the undisputed evidence is far from clear and convincing that Nissan believed the discharge injunction barred its conduct." The court also rejected Mr. Cobbs' contention that the Notice of Surrender and the September 2017 letter from his counsel revoked his earlier requests for monthly statements.

The court discharged the OSC because NMAC did not know that its conduct was subject to the discharge injunction, even though it had knowledge of the discharge injunction and intended the actions that violated the discharge injunction.

Mr. Cobbs timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334

12

and 157(b)(1). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court articulated the correct legal standard.

(2) Whether the bankruptcy court erred in treating the Motion for Contempt as an application for an OSC and staying discovery while deciding the OSC.

(3) Whether the bankruptcy court erred in holding that NMAC did not knowingly violate the discharge injunction without holding an evidentiary hearing.

## STANDARDS OF REVIEW

We review de novo questions of law, including whether the bankruptcy court applied the correct legal standard. *See Drummond v. Welsh (In re Welsh)*, 465 B.R. 843, 847 (9th Cir. BAP 2012), *aff'd*, 711 F.3d 1120 (9th Cir. 2013). De novo review requires that we consider a matter anew, as if no decision had been rendered previously. *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988).

We review for an abuse of discretion an order denying a motion for civil contempt. *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191 (9th Cir. 2003); *Nash v. Clark Cty. Dist. Atty's Office (In re Nash)*, 464 B.R. 874, 878 (9th Cir. BAP 2012). Similarly, we review a court's decision whether to hold an evidentiary hearing or allow discovery for an abuse of discretion. *See*

*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (evidentiary hearing); *Khachikyan v. Hahn (In re Khachikyan)*, 335 B.R. 121, 125 (9th Cir. BAP 2005) (discovery and continuances). To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 & n.21 (9th Cir. 2009) (en banc).

The bankruptcy court's finding of a willful violation of § 524 is a factual finding reviewed for clear error. *Emmert v. Taggart (In re Taggart)*, 548 B.R. 275, 286 (9th Cir. BAP 2016), *aff'd*, 888 F.3d 438 (9th Cir. 2018). A finding of fact is clearly erroneous if it is illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

## DISCUSSION

### A. The bankruptcy court applied the correct legal standard.

#### 1. The bankruptcy court may sanction a contemnor for a knowing violation of the discharge injunction.

Section 727(a) provides that, subject to certain exceptions, "[t]he [bankruptcy] court shall grant the debtor a discharge." The discharge order

"discharges the debtor from all debts that arose before the date of the [bankruptcy filing]." § 727(b). More specifically, a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" § 524(a)(2).

The discharge applies only to the debtor's "personal liability." § 524(a)(2). A creditor's rights in the debtor's property are not affected. *See HSBC Bank, USA, Nat'l Ass'n v. Blendheim (In re Blendheim)*, 803 F.3d 477, 494 (9th Cir. 2015) ("Discharges leave unimpaired a creditor's right to proceed *in rem* against the debtor's property."); 4 Collier on Bankruptcy ¶ 524.02 (Richard Levin & Henry J. Sommer eds., 16th ed.) ("[T]he provisions [of § 524] apply only to the personal liability of the debtor, so they do not affect an otherwise valid prepetition lien on property."). Thus, the discharge does not affect a lessor's rights in the leased property.

The discharge is automatic and self-effectuating. Creditors must obey it, even if debtors do not assert it. *See Pavelich v. McCormick, Barstow, Sheppard, Wayte & Carruth LLP (In re Pavelich)*, 229 B.R. 777, 781-82 (9th Cir. BAP 1999).

"A bankruptcy court may enforce the discharge injunction by holding a party in contempt for knowingly violating the discharge." *In re Taggart*, 888 F.3d at 443 (citing *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.)*, 450

F.3d 996, 1007 (9th Cir. 2006)). The Ninth Circuit follows a two-part test to determine whether the contemnor knowingly and willfully committed a violation of the discharge injunction: "the movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." *In re ZiLOG, Inc.*, 450 F.3d at 1007 (quoting *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059, 1069 (9th Cir. 2002)). The first element of this test looks to the creditor's subjective state of mind. *In re Taggart*, 548 B.R. at 288 ("Whether a party is aware that the discharge injunction is applicable to his or her claim is a fact-based inquiry which implicates a party's subjective belief, even an unreasonable one."). For purposes of the second element, "[t]he focus is on whether the creditor's conduct violated the injunction and whether that conduct was intentional; it does not require a specific intent to violate the injunction." *Desert Pine Villas Homeowners Ass'n v. Kabiling (In re Kabiling)*, 551 B.R. 440, 445 (9th Cir. BAP 2016).

The debtor must prove its case by clear and convincing evidence. *In re Taggart*, 548 B.R. at 286.

### 2. The bankruptcy court correctly inquired into NMAC's conduct.

Mr. Cobbs argues that the bankruptcy court applied the wrong standard when it required him to prove "that Nissan knew that the discharge injunction applied to its **conduct**." (Emphasis added.) He

contends that he only needed to prove that NMAC knew that the discharge injunction applied to NMAC's **claim**.

Mr. Cobbs' argument makes no linguistic sense. Section 524(a)(2) makes clear that the discharge is an injunction against certain kinds of **conduct**. Indeed, an injunction by its nature applies to conduct. An injunction is an order requiring someone to do or refrain from doing something. All injunctions are addressed to activity. It makes sense to enjoin a person from prosecuting or collecting a claim; it makes no sense to enjoin a claim, because claims cannot do anything and cannot be ordered to do or not do something.

Mr. Cobbs is correct that some prior decisions say that the debtor must prove that the contemnor knows that the discharge injunction applies to his "claim." The Ninth Circuit's decision *ZiLOG* is one such case. An employer agreed to pay retention bonuses to certain employees, including three women, but later rescinded the agreement and filed a bankruptcy petition. The company's general counsel informed the women in writing that, "We expect that the chapter 11 case will have no effect on you . . . ." After the company received its discharge, the women sued for sex discrimination, arguing that the company had paid the retention bonuses to male employees. The company invoked the discharge as a defense to the women's suit and also sought sanctions, claiming that the women had willfully violated the discharge injunction. The bankruptcy court ruled in

favor of the employer, but the Ninth Circuit reversed. It held that "[t]here remains the question of whether the women and their counsel were, in fact, unaware of the discharge injunction and its potential applicability **to their claims**." 450 F.3d at 1009 (emphasis added). It directed the bankruptcy court to "determine whether the women were aware of the discharge injunction and its applicability **to their claims**." *Id.* (emphasis added). It noted:

> To the extent that the deficient notices led the women to believe, even unreasonably, that the discharge injunction did not apply to their claims because they were not affected by the bankruptcy, this would preclude a finding of willfulness.

*Id.* at 1010 n.14.

> Similarly, we have relied on *ZiLOG* and stated:

> [T]he Ninth Circuit has crafted a strict standard for the actual knowledge requirement in the context of contempt before a finding of willfulness can be made. This standard requires evidence showing the alleged contemnor was aware of the discharge injunction and aware that it applied to his or her claim.

*In re Taggart*, 548 B.R. at 288. In that case, the debtor was involved in litigation when he filed for chapter 7 relief. After he received his discharge, the other parties to the litigation filed a motion seeking permission to assert that he was liable for attorneys' fees because he had "returned to the fray" after the discharge. The bankruptcy court sanctioned the other parties for

18

violating the discharge injunction, but we reversed, holding that the bankruptcy court committed clear error in finding that the other parties had willfully violated the discharge.

The *Taggart* decision sometimes says that the issue was whether the litigants were subjectively aware that the discharge applied to their "claim," but elsewhere it uses the phrase "fee request" rather than "claim." In other words, the real question was not whether the discharge applied to the other litigants' claim for attorneys' fees, but rather whether the discharge injunction protected the debtor from the litigants' assertion and enforcement of that claim. Similarly, in *ZiLOG*, the inquiry did not focus on the discrimination claims per se; the issue was whether the women could take action to prosecute their claims against their employer.

Put simply, when courts talk about the discharge of a claim, or the applicability of the discharge to a claim, they are using shorthand. When courts say that the discharge injunction applies to a claim, they mean that the discharge injunction bars the **act** of prosecuting or collecting that claim.

This clarification is particularly important to this case because the discharge injunction only protects the debtor from personal liability on discharged debts, and does not bar the enforcement of a creditor's rights in the debtor's property. This means that the discharge injunction can apply to certain conduct by the creditor – efforts to collect the debt as a personal obligation – and not apply to other conduct – efforts to enforce the

creditor's rights in the debtor's property, such as a lien or a lease – even though all of the conduct pertains to a single "claim."

We recently illustrated this point in *Ocwen Loan Servicing, LLC v. Marino (In re Marino)*, 577 B.R. 772 (9th Cir. BAP 2017). We considered whether a secured creditor had violated the discharge injunction by sending post-discharge dunning notices. We explained:

> The discharge has one important limit: it bars only efforts to collect debts "as a personal liability of the debtor." § 524(a)(2). This means that secured creditors can foreclose their liens after the discharge is entered. . . .
>
> This creates some tension. While the discharge generally prohibits creditors from communicating with discharged debtors in an effort to extract payment, lienholders usually must communicate with debtors in order to enforce their liens. For example, a foreclosure of a mortgage without notice to the mortgagor would likely be invalid even if the mortgagor were not personally liable for the mortgage debt.
>
> The way to reconcile this tension is to hold that a lienholder may communicate with a discharged debtor only to the extent necessary to preserve or enforce its lien rights, and may not attempt to induce the debtor to pay the debt.

577 B.R. at 783-84.

In this case, the bankruptcy court correctly considered not only whether NMAC knew that its claim was barred by the discharge injunction, but also whether it believed that its actions were a legitimate

and permissible effort to enforce its rights as a lessor. The bankruptcy court applied the correct legal standard.

## B. The bankruptcy court did not abuse its discretion in issuing the OSC or staying discovery while the OSC was pending.

Mr. Cobbs argues that the bankruptcy court denied him his "day in court" by treating his Motion for Contempt as an application and staying discovery. He is wrong.

### 1. The issuance of the OSC, rather than an immediate default judgment, was not error.

Mr. Cobbs argues for the first time on appeal that the bankruptcy court erred by treating his "motion for contempt" as an "application for OSC." He argues that the bankruptcy court should have granted his uncontested motion by default and awarded damages when NMAC failed to respond.

First, the difference between a motion and application "is a purely semantic distinction." *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Cir. 2011).

Second, requiring Mr. Cobbs to serve NMAC at additional addresses and allowing NMAC to respond to the OSC, rather than immediately imposing sanctions, was proper and within the bankruptcy court's discretion. Mr. Cobbs cites no authority stating otherwise.

Furthermore, Mr. Cobbs does not point to anywhere in the record

where he objected to the court's treatment of the Motion for Contempt. We decline to consider it for the first time on appeal. *See Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 543 (9th Cir. 2016).

### 2. The bankruptcy court did not err in staying discovery while the OSC was outstanding.

Mr. Cobbs argues that the bankruptcy court should not have stayed discovery while the OSC was outstanding.[4] He contends that he needed additional discovery to show discrepancies in NMAC's collection log and its knowledge of the discharge injunction's applicability to its claim.

Mr. Cobbs ignores the basic proposition that bankruptcy courts have the power to control the sequence and timing of discovery. *See United States ex rel. Army Athletic Ass'n v. Reliance Ins. Co.*, 799 F.2d 1382, 1387 (9th Cir. 1986) ("[A] district [court] has wide latitude in controlling discovery, and its ruling will not be overturned in the absence of a clear abuse of discretion."(citation omitted)); *Rebel Oil Co. v. Atl. Richfield Co.*, 133 F.R.D. 41, 42 (D. Nev. 1990) (stating that Civil Rule 26, made applicable in bankruptcy by Rule 7026, "empower[s] a district court to control the timing

---

[4] Mr. Cobbs is correct that the bankruptcy court mistakenly thought that he needed to obtain permission before conducting discovery in a contested matter. *See In re Khachikyan*, 335 B.R. at 126 ("Contrary to the debtor's position, discovery was available to him as of right in the § 707(b) contested matter. . . . In short, the appellant could have launched discovery the moment the United States trustee filed its § 707(b) motion."). But the error was harmless because, as we note in the text, the court only stayed discovery while it decided the OSC and acknowledged that discovery may be necessary if the matter proceeded beyond the OSC.

and order of discovery").

Mr. Cobbs cites our decision in *Khachikyan* for the proposition that "the contested matter should not be resolved until the required responses are provided." But *Khachikyan* does not help Mr. Cobbs' case. Mr. Cobbs notably does not stress the requirement that discovery be "appropriate to the situation[.]" 335 B.R. at 127. Indeed, we held that the bankruptcy court did not abuse its discretion in ruling on the motion to dismiss without allowing further discovery:

> We cannot say that the court abused its discretion in rejecting a continuance of the hearing so as to permit discovery. The court did not reject the discovery request out of hand. **Rather, it sought to ascertain whether discovery could yield any information that might affect the outcome of the dispute**. . . . Moreover, the debtor was unable to point to any utility to discovery under the circumstances. Hence, the court did not err in refusing further opportunity for discovery.

*Id.* at 127-28 (emphasis added).

Similarly, in the present case, the bankruptcy court stated during the hearing on the OSC that it was merely staying discovery while it decided the OSC. This was well within its discretionary power.

C.    **The bankruptcy court erred when it decided the factual question of NMAC's subjective knowledge without holding an evidentiary hearing.**

Mr. Cobbs argues that the bankruptcy court erred by finding that

NMAC did not know that the discharge injunction applied. He maintains that NMAC had ample notice that the discharge injunction applied to the Vehicle lease. We hold that the bankruptcy court should not have resolved the disputed factual issue of NMAC's knowledge without allowing appropriate discovery and holding an evidentiary hearing.

We start with the proposition that, under the *ZiLOG* standard, a creditor does not violate the discharge injunction if it subjectively believes in good faith that the discharge injunction does not prohibit its conduct, even if that belief is unreasonable. *In re Taggart*, 888 F.3d at 444 ("the creditor's good faith belief that the discharge injunction does not apply to the creditor's claim precludes a finding of contempt, even if the creditor's belief is unreasonable").

Mr. Cobbs argues that *ZiLOG*'s subjective standard only applies if the confusion arose from the bankruptcy court's misleading instruction. He argues that *ZiLOG* is limited to complex chapter 11 cases where creditors receive incorrect information from the bankruptcy court. He cites *In re Mighell*, 564 B.R. 34 (Bankr. C.D. Cal. 2017), and *Chionis v. Starkus (In re Chionis)*, BAP No. CC-12-1501-KuBaPa, 2013 WL 6840485 (9th Cir. BAP Dec. 27, 2013), for the proposition that *ZiLOG* appears to be "an aberration . . . mostly ignored in subsequent authority within the Ninth Circuit."

In *Chionis*, we held that the bankruptcy court erred in declining to award sanctions for violation of a discharge order where the creditor

24

claimed to not know that the discharge injunction applied to his claim due to a "no-discharge" provision in their contract. We distinguished *ZiLOG*, stating:

> Here, were [sic] are not dealing with a complex chapter 11 reorganization plan or with misleading notices from the debtor or the bankruptcy court suggesting that the creditors were not affected by the bankruptcy. . . . We acknowledge that some of the language in *In re ZiLOG, Inc.* is broad and arguably could be interpreted as precluding a finding of willfulness and hence precluding the imposition of contempt sanctions whenever the alleged contemnor testifies that, for whatever reason, he or she did not subjectively believe that the discharge applied to his or her claim, no matter how misguided or unreasonable that belief might have been. However, we do not believe that *In re ZiLOG, Inc.* intended such an expansive reading of its comments, given that such a reading seemingly would render the bankruptcy discharge all but toothless.

2013 WL 6840485, at *8. *Mighell* largely relies upon and echoes *Chionis'* analysis. *See* 564 B.R. at 42-43.

Since then, the Ninth Circuit has made clear that *ZiLOG* is not an aberration. Its recent decision in *Taggart* reaffirmed *ZiLOG*'s holding. 888 F.3d at 444.

*Chionis* and *Mighell* are also distinguishable. *Chionis* specifically stated that its holding did not apply to cases involving "**notices from the debtor** or the bankruptcy court **suggesting that the creditors were not affected by the bankruptcy**." 2013 WL 6840485, at *8 (emphases added).

Similarly, *Mighell* faulted the creditor for "rel[ying] upon his own mistaken interpretation of the law[,]" rather than on misleading notices from others. 564 B.R. at 43. In the present case, the communications directly from Mr. Cobbs or his counsel led NMAC to believe that it could continue sending Mr. Cobbs monthly statements.

Therefore, the bankruptcy court had to decide whether NMAC subjectively knew that its conduct violated the discharge injunction. *See In re Taggart*, 548 B.R. at 288. Disputes about a person's subjective state of mind present factual issues that courts ordinarily cannot decide without an evidentiary hearing. *In re ZiLOG*, 450 F.3d at 1007 (stating that "knowledge of the injunction is a question of fact that can normally be resolved only after an evidentiary hearing").

In this case, the bankruptcy court denied Mr. Cobbs' request for discovery and an evidentiary hearing. The Ninth Circuit has qualified that, "[o]f course, where the facts are not in dispute, no hearing need be held." *Id.* at 1008 n.11. But here the facts were in dispute. We conclude that, because there was a conflict in the evidence, the court erred.

To prove that NMAC subjectively knew that the discharge injunction applied, Mr. Cobbs relies primarily on four communications. We think that three of the four communications do not create a legitimate factual dispute, but one does.

The first communication cited by Mr. Cobbs is the "Notice of Stored

26

Vehicle" that DH Wholesale's agent, Lewis Lien Sales, sent to NMAC. But even if NMAC received it (which NMAC denies), nothing in this document explicitly or implicitly revokes Mr. Cobbs' repeated prior requests for monthly statements.[5]

The second communication is the DMV's notice to NMAC of the lien sale of the Vehicle. NMAC denies receiving it (although someone signed the postal receipt on behalf of the addressee). But even if NMAC received the notice, it does not instruct NMAC to stop communicating with Mr. Cobbs, and it does not revoke his repeated prior requests for statements.

The third communication is the form that NMAC sent to Mr. Cobbs on September 13, 2017, in which NMAC asked him to confirm in writing his prior telephonic requests for monthly statements. The letter establishes that NMAC knew of the bankruptcy – indeed, it says that NMAC "is aware of your . . . discharge in bankruptcy" – but it does not establish that NMAC knew that the discharge injunction barred its conduct. Rather, it was NMAC's attempt to obtain confirmation from Mr. Cobbs that he wanted to

---

[5] We also note troubling inconsistencies between the notice and the declaration testimony that authenticated it. For example, Douglas Higgins, owner of DH Wholesale, testified that his company took possession of the Vehicle on July 26, and that his company stores vehicles free of charge for seven days. But the notice states that DH Wholesale took possession on July 24 and appears to charge storage fees beginning on that date. The date on the notice sent to NMAC also appears to be inconsistent with Mr. Higgins' declaration.

receive monthly statements notwithstanding his discharge.

The fourth communication is Mr. Doan's letter of September 6, in which he told NMAC that the billing statements of July 24 and August 22 violated the discharge injunction. He expressly demanded that NMAC "cease future statements." If NMAC received this letter, NMAC had to have known that Mr. Cobbs did not want to receive further statements and that sending more statements would violate the discharge injunction. Nevertheless, NMAC sent two more monthly statements and the notice of default.

The question thus becomes whether NMAC received this letter. Mr. Doan sent this letter to the Cincinnati PO Box, which, as we have noted, was an address provided on the monthly statements for payments only. The same statements said that correspondence should be directed to the Designated Correspondence Address. Mr. Doan does not explain why he chose to send this important letter to a payment lockbox address rather than an address specifically designated for correspondence (or to NMAC's counsel, who had repeatedly corresponded with Mr. Doan about the proposed reaffirmation agreement). But Mr. Doan also faxed the letter to a number provided by NMAC, a fact that Mr. Merritt's declaration omits. (Nor does the declaration mention that NMAC's collection log reflects that NMAC received the fax and would forward the letter to "BK BOX FOR REVIEW.")

In addition to the communications identified in Mr. Cobbs' briefs, other facts cast doubt on NMAC's position that it did not know that Mr. Cobbs no longer wanted to receive billing statements or that it had a good faith belief that the discharge injunction did not apply. Mr. Cobbs served the Motion for Contempt on NMAC's registered agent for process, but NMAC only responded with a blanket assertion that it did not receive it. The bankruptcy court should consider on remand whether the Motion for Contempt informed NMAC that it should stop sending Mr. Cobbs billing statements. Similarly, the bankruptcy court should consider whether NMAC's failure to obtain a signed reaffirmation agreement can be reconciled with a good faith belief that the discharge did not apply.

We join in the bankruptcy court's criticism of counsel's noticing practices, which were unexplained, inexplicable, and haphazard at best, and did not comply with § 342.[6] Nonetheless, we are constrained to hold

---

[6] Section 342(c)(2)(A) provides:

> If, within the 90 days before the commencement of a voluntary case, a creditor supplies the debtor in at least two communications sent to the debtor with the current account number of the debtor and the address at which such creditor requests to receive correspondence, then any notice required by this title to be sent by the debtor to such creditor shall be sent to such address and shall include such account number.

§ 342(c)(2)(A). In addition to addresses designated for payments, the monthly billing statements from NMAC to Mr. Cobbs in the record identified NMAC's address "For Correspondence Only" as the Designated Correspondence Address. The payment

(continued...)

that the bankruptcy court erred when it held, as a matter of fact and without permitting discovery and conducting an evidentiary hearing, that NMAC lacked subjective knowledge that the discharge injunction applied. Therefore, we must REVERSE and REMAND.[7]

---

[6](...continued)
coupon also listed the Freeport Parkway Address as an alternative address. Mr. Cobbs presumably received these or similar statements in the months prior to filing his petition.

Similarly, § 342(e)(1) provides that a creditor "may both file with the court and serve on the debtor a notice of address to be used to provide notice in such case to such creditor." § 342(3)(1). Here, that address was the Designated Bankruptcy Address that NMAC had on file with the Bankruptcy Noticing Center.

[7] We reach this conclusion even though we have serious doubts about many aspects of Mr. Cobbs' case.

First, as we have noted, Mr. Cobbs has never explained why he chose to send notice to NMAC at a wide variety of addresses, with no apparent rhyme or reason, even though § 342 spells out what addresses should be used for bankruptcy noticing purposes.

Second, the notice of default that NMAC sent after Mr. Doan's September 6 letter may not have violated the discharge injunction. NMAC says that state law required it to give that notice. *See In re Marino*, 577 B.R. at 784 ("[A] lienholder may communicate with a discharged debtor only to the extent necessary to preserve or enforce its lien rights, and may not attempt to induce the debtor to pay the debt.").

Third, assuming the bankruptcy court finds a discharge violation, it must assess damages. The court must consider, in the first instance, whether receipt of the billing statements and default notice really caused Mr. Cobbs to suffer "severe anxiety" and "clinical depression," even though he had recently and repeatedly asked NMAC to send him some of the statements that he now claims were so upsetting.

(continued...)

## CONCLUSION

The bankruptcy court did not err in issuing the OSC, articulating the applicable legal standard, or staying discovery while it decided the OSC. We AFFIRM as to those matters. However, given the factual disputes concerning NMAC's knowledge, we REVERSE and REMAND for further proceedings consistent with this decision.

---

[7](...continued)
We leave all of these issues to the bankruptcy court.