**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

IN RE BRADLEY WESTON TAGGART,
*Debtor*,

SHELLEY A. LORENZEN, Executor of
Estate of Stuart Brown; TERRY W.
EMMERT; KEITH JEHNKE; SHERWOOD
PARK BUSINESS CENTER, LLC,
*Appellants*,

v.

BRADLEY WESTON TAGGART,
*Appellee.*

No. 16-35402

D.C. No.
3:12-cv-00236-
MO

IN RE BRADLEY WESTON TAGGART,
                        *Debtor*,

BRADLEY WESTON TAGGART,
                        *Appellant*,

v.

SHELLEY A. LORENZEN, Executor of
Estate of Stuart Brown; TERRY W.
EMMERT; KEITH JEHNKE; SHERWOOD
PARK BUSINESS CENTER, LLC,
                        *Appellees.*

No. 16-60032

BAP No.
15-1158

IN RE BRADLEY WESTON TAGGART,
                        *Debtor*,

BRADLEY WESTON TAGGART,
                        *Appellant*,

v.

TERRY W. EMMERT; KEITH JEHNKE;
SHERWOOD PARK BUSINESS CENTER,
LLC; SHELLEY A. LORENZEN,
Executor of Estate of Stuart Brown,
                        *Appellees.*

No. 16-60033

BAP No.
15-1119

IN RE BRADLEY WESTON TAGGART,
*Debtor*,

No. 16-60039

BAP No.
15-1119

SHELLEY A. LORENZEN, Executor of
the Estate of Stuart Brown,
*Appellant*,

v.

BRADLEY WESTON TAGGART,
*Appellee.*

IN RE BRADLEY WESTON TAGGART,
*Debtor*,

No. 16-60040

BAP No.
15-1119

TERRY W. EMMERT; KEITH JEHNKE;
SHERWOOD PARK BUSINESS CENTER,
LLC;
*Appellants*,

v.

BRADLEY WESTON TAGGART,
*Appellee.*

IN RE BRADLEY WESTON TAGGART,
                  *Debtor*,

SHELLEY A. LORENZEN, Executor of
the Estate of Stuart Brown,
                  *Appellant*,

v.

BRADLEY WESTON TAGGART,
                  *Appellee.*

No. 16-60042

BAP No.
15-1158

IN RE BRADLEY WESTON TAGGART,
                  *Debtor*,

TERRY W. EMMERT; KEITH JEHNKE;
SHERWOOD PARK BUSINESS CENTER,
LLC;
                  *Appellants*,

v.

BRADLEY WESTON TAGGART,
                  *Appellee.*

No. 16-60043

BAP No.
15-1158

OPINION

On Remand from the United States Supreme Court

Argued and Submitted June 16, 2020
San Francisco, California

Filed November 24, 2020

Before:  Edward Leavy, Richard A. Paez, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

## SUMMARY[*]

### Bankruptcy

On remand from the Supreme Court, the panel affirmed the Bankruptcy Appellate Panel's decision reversing the bankruptcy court's finding of civil contempt and vacating its award of civil contempt sanctions against a debtor's former business partners for violation of the discharge injunction.

The debtor filed his bankruptcy petition during state court litigation brought against him by his former partners. After the debtor lost non-monetary claims in the state court, the partners moved for attorney's fees incurred after the filing of the bankruptcy petition, arguing that an exception to the discharge injunction applied because the debtor "returned to the fray" by participating in a post-trial hearing to litigate the terms of his expulsion from the partnership.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The bankruptcy court held the partners in civil contempt for seeking attorney's fees in the state court.

In a prior decision, the panel affirmed the BAP's decision because the partners had a good faith belief that the debtor had returned to the fray. The Supreme Court vacated and remanded for further proceedings, holding that an objective, rather than subjective, standard applies, and a court may hold a creditor in civil contempt for violating a discharge order if there is no fair ground of doubt as to whether the order barred the creditor's conduct. Applying this standard, the panel held that the debtor's former partners had an objectively reasonable basis to conclude that the debtor might have returned to the fray in the Oregon state court to obtain some economic benefit. The panel therefore affirmed the BAP's decision to reverse the bankruptcy court's finding of civil contempt and to vacate the award of civil contempt sanctions.

## COUNSEL

Daniel L. Geyser (argued), Geyser P.C., Dallas, Texas; John M. Berman, Tigard, Oregon; for Bradley Weston Taggart.

Janet M. Schroer (argued), Hart Wagner LLP, Portland, Oregon; James Ray Streinz, Streinz Law Office, Portland, Oregon, for Shelley Lorenzen.

Hollis Keith McMilan, Hollis K. McMilan P.C., Portland, Oregon; for Terry W. Emmert, Keith Jehnke, and Sherwood Park Business Center LLC.

Michele Miriam Matesi, Emmert International, Clackamas, Oregon, for Terry W. Emmert.

David R. Kuney, Potomac, Maryland, for Amici Curiae The Honorable Eugene Wedoff (Ret.), The Honorable Leif Clark (Ret.), and a Group of Law Professors.

## OPINION

BEA, Circuit Judge:

Attempting to pick up, for themselves, the scattered remnants of a soured business relationship, two partners filed an Oregon state court action against the third partner, Bradley Taggart. They sought to expel him from the partnership for misconduct. On the eve of trial, however, Taggart filed a bankruptcy petition, which eventually provided him with a discharge injunction that barred creditors (including his two litigious partners) from collecting any discharged debts and that voided monetary judgments related to any discharged debts. The Oregon state

court correctly dismissed the monetary claims against Taggart, but determined he was a "necessary party" to the non-monetary claims against him and thus denied his motion to be dismissed from the action. Taggart ultimately lost at trial, and the Oregon state court ordered him expelled from the partnership.

The prevailing partners then filed a motion for attorney's fees incurred after the date that Taggart had filed his bankruptcy petition. While they acknowledged that a bankruptcy discharge injunction generally covers, and thereby precludes, claims for post-bankruptcy petition attorney's fees, they argued that an exception to the general rule applied: Pursuant to *In re Ybarra*, 424 F.3d 1018 (9th Cir. 2005), the partners claimed that Taggart had "returned to the fray" in the Oregon state court litigation, after filing his bankruptcy petition, by actively participating in a post-trial hearing to litigate the terms of his impending expulsion. This "return to the fray," the prevailing partners argued, created an exception to the discharge injunction and made Taggart amenable to a monetary claim for post-petition attorney's fees. We are tasked with applying a new standard from the Supreme Court to determine whether the prevailing partners had an "objectively reasonable basis" for their conclusion that Taggart had "returned to the fray," so as to avoid the civil contempt sanctions Taggart seeks on his claim that the partners violated his bankruptcy discharge injunction.

## I.  BACKGROUND

### A.  Taggart's Co-Ownership in SPBC

Taggart, along with partners Terry Emmert and Keith Jehnke, co-owned Sherwood Park Business Center, LLC ("SPBC"), a limited liability company formed by the three

partners to develop a small office complex in Oregon. *Sherwood Park Bus. Ctr., Ltd. Liab. Co. v. Taggart*, 323 P.3d 551, 555 (Or. Ct. App. 2014). Taggart initially served as manager of SPBC and was tasked with securing loans to fund the development project. *Id.* Ultimately, however, SPBC could not obtain the loans necessary to fund its operation. Saddled with personal financial troubles, Taggart had diverted funds from SPBC for his own personal use. *Id.* After Emmert and Jehnke discovered Taggart's misappropriations, they removed him as manager; Taggart then "disappeared for a period of time."[1] *Id.*

In need of funds, Taggart sought to liquidate his interest in SPBC, but SPBC's operating agreement (the "Operating Agreement") imposed certain selling restrictions such as the right of first refusal for the other partners. Taggart's attorney John Berman conceived a plan to circumvent these restrictions. Berman advised Taggart to form a new limited liability company and then transfer his interest in SPBC to that new company. *Id.* at 555–56. Taggart then could sell his interest in the newly formed company—its only asset being Taggart's interest in SPBC—without complying with the selling restrictions imposed by the Operating Agreement. Taggart agreed and, consistent with this advice, transferred his entire interest in SPBC to newly formed BT of Sherwood, LLC ("BT"). *Id.* at 556.

There was one problem with the plan: BT's newly acquired interest in SPBC was encumbered with the same selling restrictions that had earlier vexed Taggart. Unsurprisingly, Taggart was unable to secure a buyer for

---

[1] Ultimately, an arbitrator concluded that Taggart, indeed, had converted funds from SPBC and entered a judgment in favor of SPBC. *Sherwood Park Bus. Ctr.*, 323 P.3d at 555.

BT. Seemingly out of options and owing Berman attorney's fees, Taggart decided to give Berman a security interest in his ownership in BT. *Id.* at 556. Eventually, Taggart sold to Berman his entire ownership in BT—and, with it, his ownership interest in SPBC, which was still subject to the aforementioned restrictions on alienation.

## B.  Oregon State Court Litigation

As a result of Taggart's transactions, SPBC, Emmert, Jehnke, and their attorney Stuart Brown (collectively, the "Creditors") filed suit against Taggart and Berman in Oregon state court. The Creditors alleged that Taggart had failed to comply with the Operating Agreement's process for transferring an ownership interest in SPBC. The Creditors also alleged that Taggart had breached his fiduciary duty by misappropriating funds and refusing to cooperate with potential lenders that had caused SPBC to lose out on more favorable borrowing terms. The Creditors requested that the Oregon state court (1) void the putative sale between Taggart and Berman; (2) void the transfer between Taggart and BT; (3) declare that Taggart had breached the Operating Agreement; (4) expel Taggart from SPBC; and (5) pursuant to the buyout provision in the Operating Agreement, force Taggart to sell to the Creditors his ownership interest in SPBC at the price stipulated by the Operating Agreement.

In response to the lawsuit, Taggart filed an answer, which asserted the validity of the putative sale and thus denied any liability flowing therefrom, and a counterclaim against the Creditors. The counterclaim asserted a single count for attorney's fees pursuant to the Operating Agreement and Or. Rev. Stat. § 20.105, both of which allowed attorney's fees for the "prevailing party." Berman, as Taggart's attorney, signed both the answer and the counterclaim.

On the eve of trial, Taggart filed a petition in bankruptcy and eventually obtained a discharge of his debts.[2] Berman, on behalf of Taggart, then filed a motion to dismiss the Oregon state court claims because Taggart had "been discharged in bankruptcy and the claims against him relate solely to his pre-bankruptcy petition conduct." The Creditors agreed that they could not seek a monetary judgment against the discharged Taggart. But they argued that Taggart was a "necessary party" in regard to their non-monetary claim to expel Taggart from SPBC and thus force Taggart to sell his interest in SPBC to them, in accordance with the Operating Agreement. The Oregon state court agreed with the Creditors: it dismissed the monetary claims against Taggart but proceeded to trial on the non-monetary claims against him.[3] Notably, neither Taggart nor the Creditors moved to dismiss Taggart's sole counterclaim for attorney's fees.

### 1. Oregon State Court Decision

Taggart lost on the merits. Following the bench trial, the Oregon state court issued findings of fact and conclusions of law. The court first voided the putative sale between Taggart and Berman because the attempted transfer of Taggart's interest in SPBC violated both the Operating Agreement and Oregon state law. Next, the court expelled Taggart from SPBC for his misconduct pre-dating the sale with Berman.

---

[2] Taggart did not list his interest in SPBC or BT as an asset on his bankruptcy schedules, but he did list his counterclaim for attorney's fees. The bankruptcy trustee eventually disclaimed any interest in the counterclaim.

[3] At the close of trial, Berman (on behalf of Taggart) renewed the motion to dismiss, in which he argued for dismissal of all claims against Taggart. The Oregon state court denied that motion as well.

More specifically, the court found that Taggart was subject to expulsion under Or. Rev. Stat. § 63.209 because (1) Taggart misappropriated funds; and, independently, (2) Taggart willfully or persistently breached the Operating Agreement by "not cooperating with the banks to give them financial statements, disappearing for a long period of time, probably disappearing on purpose, not wanting to be talked to and just basically making himself unavailable to do business except on his terms." As a result of the voided sale and expulsion, Taggart was forced to sell to the Creditors his ownership interest in SPBC.[4]

### 2. Oregon State Court's Hearing on the Proposed General Judgment

The Oregon state trial court held a hearing to determine the terms of the impending forced sale and the proposed general judgment, to which Berman filed objections on behalf of himself and Taggart. The Parties first argued about whether the sales price should reflect the valuation of Taggart's ownership stake on (a) the earlier date of his misconduct or (b) the later date of the court's general judgment. The Parties also presented argument on whether the Creditors should pay any interest accruing from the determined date of valuation.

Advocating that the court should choose the date of Taggart's misconduct for the valuation, Berman first confirmed that Taggart, not Berman, would be receiving the proceeds from the forced sale. Berman explained that Taggart still owed money to the IRS and Oregon Department

---

[4] The Court of Appeals of Oregon ultimately affirmed the Oregon state court's judgment. *See Sherwood Park Bus. Ctr.*, 323 P.3d at 563. No further appeal to the Oregon Supreme Court followed.

of Revenue and suggested that Taggart intended to use the proceeds to "get his life cleaned up" and "get the taxing authorities settled" rather than settle anything owed to Berman. Berman then clarified that the bankruptcy trustee had eschewed any interest in the proceeds from the forced sale.

Taggart consented to Berman's argument, but Taggart himself also participated in the hearing. Taggart confirmed that he owed money to the taxing authorities and that he intended to use the proceeds from the forced sale to pay off those obligations. He also argued that the proceeds from the forced sale should reflect the valuation of his ownership stake on the date of his misconduct and that the Creditors should pay him any interest that had accrued between the date of his misconduct and the date of general judgment. Taggart protested that the Creditors "can't have their cake and eat it too" because "[f]air is fair."

### 3. *The Creditors' Motion for Attorney's Fees*

Shortly after the hearing, the Oregon state court entered its general judgment and included a directive about attorney's fees: "Any party seeking costs or attorney fees shall do so in accordance with ORCP 68." The Creditors then filed their motion for attorney's fees. Acknowledging that Taggart's bankruptcy discharge precluded any attorney's fees that were incurred before the date Taggart had filed his bankruptcy petition, the Creditors limited their request to attorney's fees that were incurred post-petition because Taggart had taken affirmative post-petition actions in the Oregon state court litigation and thus "returned to the fray" pursuant to *In re Ybarra*, 424 F.3d 1018 (9th Cir.

2005).**[5]**   The Oregon state court agreed that Taggart had returned to the fray and awarded attorney's fees to the Creditors.

## C.  Procedural History of this Appeal

Taggart promptly moved the Bankruptcy Court to hold the Creditors in civil contempt for seeking attorney's fees in the Oregon state court litigation and thus violating his discharge injunction.    The Bankruptcy Court granted Taggart's request. *See In re Taggart*, 522 B.R. 627 (Bankr. D. Or. 2014).**[6]**  In holding the Creditors in civil contempt, the Bankruptcy Court applied a standard that it described as akin to "strict liability." *Id.* at 632.  The Bankruptcy Court explained that civil contempt sanctions were warranted, irrespective of the Creditors' beliefs, so long as the Creditors were "aware of the discharge" injunction and "intended the

---

**[5]** A bankruptcy discharge order "operates as an injunction" that bars creditors from collecting any debts that have been discharged and that voids judgments relating to any debts that have been discharged. 11 U.S.C. § 524(a).  We have recognized an exception to this injunction, however: when the debtor has "returned to the fray" by engaging in post-bankruptcy petition litigation. *See Ybarra*, 424 F.3d at 1022–24, 1026 (explaining that the inquiry is focused on "whether the debtor has taken affirmative post-petition action to litigate a pre[-]petition claim and has thereby risked the liability of these litigation expenses").

**[6]** The Bankruptcy Court initially denied Taggart's contempt motion and, on appeal, the District Court reversed, determining that Taggart did not "return to the fray" and remanding to the Bankruptcy Court to decide whether the Creditors "knowingly violated the discharge injunction." *Taggart v. Brown*, No. 3:12-cv-00236, 2012 U.S. Dist. LEXIS 111780, at *13–17 (D. Or. Aug. 6, 2012).  Because the District Court did not have the benefit of the subsequent Supreme Court decision in this case, its reasoning is of no persuasive value.

actions which violate[d]" it by seeking attorney's fees in the Oregon state court action. *Id.* (citation omitted).

The Bankruptcy Appellate Panel (the "BAP") reversed the Bankruptcy Court's civil contempt order and vacated its award of civil contempt sanctions. *In re Taggart*, 548 B.R. 275, 279 (B.A.P. 9th Cir. 2016). The BAP held that a creditor who violates a discharge injunction cannot be held in contempt unless "evidence show[ed] the alleged contemnor was aware of the discharge injunction *and* aware that it applied to his or her claim." *Id.* at 288. Applying this standard, the BAP concluded that the Bankruptcy Court should have denied Taggart's motion for civil contempt because the Creditors did not know that the discharge injunction barred their claims for post-petition attorney's fees. *Id.* at 291.

In our prior decision, we affirmed the BAP's decision and held that a creditor's "good faith belief that the discharge injunction does not apply to the creditor's claim precludes a finding of contempt, even if the creditor's belief is unreasonable." *In re Taggart*, 888 F.3d 438, 444–45 (9th Cir. 2018), *vacated and remanded*, 139 S. Ct. 1795 (2019). We concluded that the Creditors held a "good faith belief" that Taggart had "returned to the fray" in the Oregon state court litigation after he had filed his bankruptcy petition and, as a result, the Bankruptcy Court had erred when it held the Creditors in civil contempt for seeking post-petition attorney's fees. *Id.*

The U.S. Supreme Court vacated our prior decision and remanded for further proceedings. *See Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). The Supreme Court explained that an objective, rather than subjective, standard is more appropriate in determining whether the Creditors could be held in civil contempt for violating the bankruptcy discharge

injunction. *Id.* at 1799. The Supreme Court held that "a court may hold a creditor in civil contempt for violating a discharge order if there is *no fair ground of doubt* as to whether the order barred the creditor's conduct." *Id.* (emphasis in original). "In other words, civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id.* We are now tasked with revisiting this case and applying this new standard.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review decisions of the BAP pursuant to 28 U.S.C. § 158(d). We review *de novo* the BAP's decision, *In re Filtercorp, Inc.*, 163 F.3d 570, 576 (9th Cir. 1998), and we review the Bankruptcy Court's civil contempt ruling for abuse of discretion, *In re Dyer*, 322 F.3d 1178, 1191 (9th Cir. 2003).

## III. DISCUSSION

Civil contempt is a "severe remedy" and, correspondingly, the Supreme Court has set a significantly high hurdle for when it is imposed. *Taggart*, 139 S. Ct. at 1802. The standard is rooted in the concept that "basic fairness requir[es] that those enjoined receive explicit notice of what conduct is outlawed before being held in civil contempt." *Id.* (internal quotation marks and citation omitted). Thus, "civil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful." *Id.* at 1799.

The Creditors agree that a discharge injunction normally covers, and thereby precludes, claims for post-petition attorney's fees stemming from litigation that commenced pre-petition but that continued post-petition, as did the

Oregon state court litigation here. But they argue that they had an objectively reasonable basis to conclude that the discharge injunction did not bar their claim for attorney's fees because Taggart had "returned to the fray" in the Oregon state court litigation after filing his bankruptcy petition.

In *Ybarra*, like here, a prevailing party sought attorney's fees for work done, post-petition, in litigation that the debtor had initiated before filing her bankruptcy petition. 424 F.3d at 1020–21. We explained that these claims are not discharged where, post-petition, the debtor "voluntarily 'return[s] to the fray.'" *Id.* at 1026 (quoting *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 533–34 (9th Cir. 1998)). The inquiry focuses on "whether the debtor has taken affirmative post-petition action to litigate a pre[-]petition claim and has thereby risked the liability of these litigation expenses."**[7]** *Id.* There, we ultimately held that the debtor had "returned to the fray" by taking post-petition steps to "revive" her pre-petition cause of action, which had already been settled and dismissed. *Id.* at 1020–21, 1027.

The question for us, however, is not whether Taggart actually "returned to the fray" in the Oregon state court

---

**[7]** In *In re Castellino Villas, A.K.F. LLC*, we clarified that the rule from *Ybarra* is a manifestation of, not an exception to, the "fair contemplation" test, which is the test we use to determine whether a creditor's claim is subject to the discharge injunction. 836 F.3d 1028, 1035 (9th Cir. 2016). Under the fair contemplation test, "a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under non-bankruptcy law." *In re SNTL Corp.*, 571 F.3d 826, 839 (9th Cir. 2009). Because *Castellino Villas* was decided *after* the Creditors filed their motion for attorney's fees, it is not relevant to the primary issue on appeal.

litigation. Nor is it whether the Creditors had an objectively reasonable basis for concluding that Taggart had "returned to the fray." Rather, the question is whether the Creditors had some—indeed, *any*—objectively reasonable basis for concluding that Taggart *might have* "returned to the fray" and that their motion for post-petition attorney's fees *might have* been lawful. *See Taggart*, 139 S. Ct. at 1799 ("[C]ivil contempt may be appropriate if there is no objectively reasonable basis for concluding that the creditor's conduct *might be* lawful." (emphasis added)).

The Creditors argue that Taggart's motion to dismiss at the outset of trial, coupled with his failure to file a voluntary dismissal of his counterclaim for attorney's fees, voluntarily returned him to the fray. Ignoring the Creditors' suggestion that the inherently passive nature of Taggart's "failure" to file a voluntary dismissal constituted an "affirmative" action, Taggart's motion to dismiss suggests that he was trying to avoid the fray—not return to it.[8] But more importantly, Taggart was permitted to litigate his pre-petition counterclaim. Concluding otherwise would misconstrue *Ybarra* as holding that a debtor is *always* held liable for post-petition attorney's fees if he merely continued to litigate pre-petition claims; on the contrary, *Ybarra* makes clear that a debtor *may* be held liable only if, post-petition, he "voluntarily 'pursued a whole new course of litigation,' commenced litigation, or 'returned to the fray' voluntarily."

---

[8] Relatedly, we also reject the notion that the Creditors forced Taggart to "return to the fray" by opposing Taggart's motion to dismiss. Assuming the Oregon state court had dismissed all claims against Taggart and the Creditors had prevailed against Berman to unwind the Taggart-Berman sale, the Oregon state court then would have lacked the authority to exercise the equitable remedy of expulsion against non-party Taggart. The Creditors had no choice but to oppose outright dismissal if they were to procure the relief that they sought.

*Ybarra*, 424 F.3d at 1024 (citing *Siegel*, 143 F.3d at 533–34).[9]

That said, Taggart's voluntary actions, arguments, and positions taken at the hearing on the proposed state court judgment constituted an objectively reasonable basis for the Creditors to conclude that Taggart *might have* "returned to the fray." During the hearing, the parties discussed the particulars surrounding Taggart's forced sale of his share in SPBC, a consequence of his expulsion. Taggart argued—both *pro se* and via Berman—that the proper date for valuation purposes should be the earlier date of his alleged misconduct that resulted in his expulsion, rather than the later date of the Oregon state court's entry of judgment. Because Taggart would receive the proceeds from the forced sale, he had an incentive to advocate for the date that would produce the highest valuation. Taggart also argued for the earlier date of valuation so he could claim prejudgment interest between that date and the date of entry of the judgment.

These arguments were not for the benefit of Berman, the putative vendee of Taggart's ownership stake in SPBC. Berman acknowledged during the hearing that he would not receive any of the proceeds from the forced sale. Berman also revealed that these proceeds would not offset any claims that Berman may potentially have had against Taggart for the botched sale.

---

[9] It is worth noting that had Taggart prevailed on the Creditors' claim for expulsion, Taggart would have been entitled to attorney's fees under the Operating Agreement—regardless of his counterclaim. *See* Or. Rev. Stat. § 20.083 (allowing attorney's fees for a "prevailing party in a civil action relating to an express or implied contract" if it is "authorized by the terms of the contract").

These arguments were not for the benefit of the bankruptcy trustee either. Berman acknowledged during the hearing that "[t]here is no bankruptcy trustee" because "Taggart's bankruptcy has been complete. . . . [T]he bankruptcy trustee looked at this matter at the time and said that . . . he had no interest in it."

Instead, Taggart advanced these arguments for his own benefit.  Although Berman had already paid Taggart for his ownership stake in SPBC, the Oregon state court voided the Taggart-Berman sale, which had the effect of directing the proceeds of the forced sale to Taggart.  Presumably mindful of this windfall, Taggart indicated that he intended to use the proceeds to pay off tax liabilities to the IRS and Oregon Department of Revenue—obligations that were not discharged in his bankruptcy.  Berman acknowledged that was where the proceeds would go in order "to get his life cleaned up" and "get the taxing authorities settled."

Taggart's personal appearance and testimony at the hearing must be viewed in light of his prior avoidance of the litigation.  After the Oregon state court partially denied Taggart's motion to dismiss and deemed him a necessary party to litigate the non-monetary claims against him, Taggart was completely absent from the trial.  Although Berman presented evidence, advanced argument, and filed papers on behalf of Taggart, Taggart did not testify at the trial.  At the post-trial hearing, however, Taggart not only appeared but he actively advocated for himself.  His renewed participation, however, was unnecessary as Berman was still representing Taggart's interests.  In fact, Berman had presented the same arguments that Taggart voiced during the hearing—regarding the proper date for valuation purposes and prejudgment interest—before Taggart had addressed the court: (1) through Berman's formal written objections before

the hearing, and (2) in person at the hearing. The Creditors were compelled to utilize their attorneys to resist Taggert's arguments, thereby incurring additional attorney's fees.

Accordingly, the Creditors had an objectively reasonable basis to conclude that Taggart might have "returned to the fray" in the Oregon state court to obtain some economic benefit from a higher evaluation of the sale of his ownership stake in SPBC and in the amount of interest that had accrued after the date payment was due for the forced sale. *See Ybarra*, 424 F.3d at 1024 ("If the debtor chooses to enjoy his fresh start [after bankruptcy discharge] by pursuing pre-petition claims which have been exempted, he must do so at the risk of incurring the post-petition costs involved in his acts." (internal citation omitted)). In response to Taggart's arguments at the post-trial hearing, the Creditors reasonably defended their positions. In light of the significantly high standard given to us by the Supreme Court, the Creditors should not be liable for civil contempt sanctions. We, therefore, AFFIRM the BAP's decision to reverse the Bankruptcy Court's finding of civil contempt and to vacate the award of civil contempt sanctions.

**AFFIRMED.**